**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| CACHO-CAMBO TRUST; and | ) | CIVIL NO. 23-_____ (___) |
| GRUPO CACHO, INC. | ) | |
| | ) | ACTION FOR DECLARATORY AND |
| Plaintiffs, | ) | INJUNCTIVE RELIEF; CIVIL CONSPIRACY: |
| | ) | FRAUD, FRAUDULENT INDUCEMENT: |
| vs. | ) | BREACH OF CONTRACT, NEGLIGENT |
| | ) | MISREPRESENTATION; CONVERSION; |
| DAWN HOLDING COMPANY, LLC; | ) | UNJUST ENRICHMENT; ESTOPPEL; |
| MRS. KAUSHALYA SIRIWARDANA; | ) | INDEBITATUS ASSUMPSIT; BREACH OF |
| HELPING HANDS, INC.; | ) | CONTRACT; POSSIBLE VIOLATIONS OF |
| JOHN DOE; | ) | THE ORGANIZED CRIME CONTROL ACT |
| JANE DOE; | ) | OF 1970 a/k/a THE RACKETEER |
| ABC, INC.; and | ) | INFLUENCED AND CORRUPT |
| DEF, LLC, | ) | ORGANIZATIONS ACT, 18 U.S.C. §§ 1961- |
| | ) | 1968 (RICO); AND DAMAGES UNDER |
| Defendants. | ) | PUERTO RICO LAW |
| _____ | ) | |

## VERIFIED COMPLAINT

COME NOW PLAINTIFFS the CACHO-CAMBO TRUST (hereafter, the "**Trust**") and

GRUPO CACHO, INC. (hereafter, "**GCI**"), and for their Verified Complaint against defendants

Dawn Holding Company, LLC (hereafter, "**DHC**"); HELPING HANDS, INC. (hereafter,

"**Helping Hands**"), and their president, defendant KAUSHALYA SIRIWARDANA (hereafter,

"**Siriwardana**"), and other above-captioned defendants, very respectfully state, allege, and

request as follows.

## I. INTRODUCTION.

1. This is a case in which a Puerto Rican company, Cabo Rojo Land Acquisition, LLC

(hereafter, "**CRLA**"), owned by Plaintiff the Cacho-Cambo Trust (again, the "**Trust**"), and

CLRA's operational arm, Plaintiff Grupo Cacho, Inc. (again, "**GCI**"), all presided over by

Roberto M. Cacho (hereafter, "**Mr. Cacho**") as Trustee of the Trust and president of CRLA and

CIVIL NO. _____ (__); *Cacho-Cambo Trust and Grupo Cacho, Inc. v. Dawn Holding Company, LLC,* et al.
**VERIFIED COMPLAINT**
Page 2

CGI, were cozened into making an investment of SEVEN HUNDRED FIFTY THOUSAND DOLLARS

($750,000.00) which was stolen/converted by the above-captioned defendants, operating an

international scheme that appears to constitute a "pattern of racketeering activity" in violation of

the Organized Crime Control Act of 1970, also known as the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. §§ 1961-1968 ("**RICO**").  The sole shareholder of CRLA is the

Trust, the sole beneficiary of which is Natalia Cacho-Cambó, and its sole trustee, Mr. Cacho,

who was the president of CLRA and is the president of Plainitff GCI.

2.  After extensive and complicated negotiations for several months, on August 3, 2020,

defendants, by "The Honorable" Kaushalya Siriwardana (again, "**Siriwardana**") and defendant

Dawn Holding Company (again, "**DHC**"), provided CRLA with a formal Memorandum of

Agreement (MOA) (hereafter, the "**MOA**").  Pursuant to the MOA, DHC committed to provide

the engineering, procurement, construction, and funding (hereafter, "**EPCF**") of CLRA's

proposed development of a resort hotel and spa project to be constructed on more than 911 acres

in Cabo Rojo, Puerto Rico (hereafter, the "**Project**").  The anticipated cost of the Project was

more than FOUR HUNDRED SIXTY MILLION DOLLARS ($460,000,000.00) (hereafter, the

"**Estimated Project Cost**").

3.  The defendants – in particular, DHC, Helping Hands, and Siriwardana –

invited/induced CLRA to deposit the sum of SEVEN HUNDRED FIFTY THOUSAND DOLLARS

($750,000.00) with DHC as part of an "Administrative Fee" in the total amount of THREE

MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00) (hereafter, the "**Administrative**

**Fee**"), with the TWO MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($2,750,000.00)

balance of the Administrative Fee to be paid by defendant DHC pursuant to paragraph 2 of the

MOA (hereafter, "**DHC's Administrative Fee Portion**"), in anticipation of obtaining financing

for the Project.  Defendants DHC and Helping Hands induced CRLA into paying the

$750,000.00 towards the Administrative Fee (hereafter, "**CLRA's Administrative Fee**

**Portion**") by promising, pursuant to paragraph 1 of the MOA (PURPOSE OF THE MOA) and

an Engineering, Procurement, Construction and Funding (EPCF) Agreement executed on August

9 and 10, 2020 (hereafter, the "**ECPF Agreement**"), that DHC would pay DHC's Administrative

Fee Portion and, as the "principle" [sic] of the EPCF, would obtain, by accessing the funding

sources in DHC's "International Consortium" (which it warranted in the MOA that it had "the

ability and resources to arrange ... credit funds that are clean, clear and readily available"), and,

acting as CLRA's consultant for financial instruments ,would obtain the credit facility of TWO

HUNDRED FIFTY MILLION DOLLARS ($250,000,000.00) towards the Estimated Project Cost

(hereafter, the "**Facility**").  Also according to paragraph 1 of the MOA (PURPOSE OF THE

MOA), in consideration of its payment of the sum of DHC's Administrative Fee Portion and

performing its other obligations thereunder, defendant DHC was to receive "twenty five percent

shares" in the Project.  The Project was defined in the ECPF Agreement (emphasis in original) as

"***Developing Cabo Rojo Resort, Spa, Land Purchase (911 Acres) and White Sandy Beachfront***

***Development***" and that "***DHC consultancy will cover all aspect of the project from start to final***

***completion of EPCF Project-Based funding***."

    4.  Pursuant to paragraph 2 of the MOA (THE PROCESS), CLRA was obligated to pay to

DHC the sum of $750,000.00 as its portion of an "Administrative Fee" (hereafter, "**CLRA's**

**Administrative Fee Portion**") by wiring said funds to DHC's account at Comerica Bank in

Richardson, Texas.  By subsequent agreements between CLRA and DHC, the time frame for

paying CLRA's Administrative Fee Portion was extended several times in order for CLRA to

CIVIL NO. _____ (__); *Cacho-Cambo Trust and Grupo Cacho, Inc. v. Dawn Holding Company, LLC,* et al.
VERIFIED COMPLAINT
Page 4

raise the required funds, which were provided by funds borrowed by Plaintiff GCI and paid to

DHC in December 2020.

5.  DHC obligated itself to obtain the Facility for the Estimated Project Cost and to pay

the sum of $2,750,000.00 towards the total Administration Fee of THREE MILLION FIVE

HUNDRED THOUSAND DOLLARS ($3,500,000.00), and to obtain the Facility in exchange for 25%

of the equity in the Project.  Defendants DHC, Helping Hands, and Siriwardana further promised

in the EPCF Agreement that the portion of the Administrative Fee paid by CRLA to DHC would

be ***fully refundable***, and that there were ***no risks involved***, inasmuch as DHC, Helping Hands,

and "Minister" Siriwardana enjoyed a solid relationship with its "International Consortium" of

lenders and investors (hereafter, the "**International Consortium**") that would provide the

Facility.

6.  Defendants DHC, Helping Hands, and Siriwardana were so eager to receive CRLA's

Administrative Fee Portion that on November 30, 2020, defendant DHC forwarded a letter

signed by defendant Siriwardana to Mr. Cacho, then CRLA's president, that stated [bracketed

material supplied]:

> Roberto, we can confirm for your invertor [sic] forwarding $650,000 to
> Dawn Holding Company LLC, that is [sic] 3 banking days, DHC will give
> an additional $200,000 for the lender and $50,000 for Jose Manuel
> Rodriguez, President Benique Services, LLC. [Mr Rodriguez was acting as
> an agent of CLRA.]

7.  Noticeably, the urgency to receive CRLA's Administrative Fee Portion was so great

that DHC and Siriwardana began to deal directly with GCI's and Mr. Cacho's sources of capital,

including Mr. Rodríguez, at a time when only $100,000 had been raised from the fully refundable

$750,000 deposit for CRLA's Administrative Fee Portion.  After the promises from defendants

DHC and Siriwardana, CRLA was able to raise the additional $650,000 from a group of private

investors that included Plaintiff GCI.  Eventually, GCI was required to repay the money it had

borrowed in order to pay CRLA's Administrative Fee Portion by selling the Trust's ownership

interest in CRLA.  As a result of that sale, and because of it, Plaintiffs forfeited tax credits in the

amount of ONE HUNDRED NINETY-THREE MILLION DOLLARS ($193,000,000.00) (hereafter, the

"**Tax Credits**").

8.  Plaintiffs later discovered that the defendants had been running their business as a

fraudulent scheme, utilizing CRLA's Administrative Fee Portion for their own benefit,

committing acts of mail fraud, wire fraud, and money laundering by means of an "enterprise"

utilized by them for that purpose, namely, defendant Helping Hands.  When defendants DHC and

Siriwardana failed to act on or comply with their obligations under the MOA and the ECPF

Agreement, their scheme was exposed.  Defendants DHC, Helping Hands, and Siriwardana have

constantly been making false promises and/or avoiding Mr. Cacho and his complaints regarding

their non-compliance with the terms and conditions of the MOA and the EPCF Agreement, as

will be demonstrated below, through a plethora of emails and voice messages that constitute

"predicate acts" under RICO.

9.  It is Plaintiffs' belief that no such "International Consortium" ever existed, that the

$2,750,000.00 to be paid as DHC's Administrative Fee Portion was never paid by any of the

defendants to their non-existent "International Consortium," and that none of the defendants –

not DHC, not Helping Hands, and not "Minister" Siriwardana – has ever closed on a similar

transaction, their many [false] written and verbal assurances to the contrary notwithstanding.

10.  Subsequent to the filing of this Verified Complaint, Plaintiffs will be filing an *ex

parte* Motion for Declaratory, Temporary, Preliminary, and Permanent Injunctive Relief

requesting that this Honorable Court order, among other things, the freezing of all of defendant

DHC's, defendant Helping Hands', and defendant Siriwardana's assets and bank accounts, including but not limited to those at Comerico Bank in Texas, and preventing all assets and bank accounts of defendants DHC, Helping Hands, and Siriwardana, including DHC's account at Comerico Bank, from being secreted, transferred, pledged, withdrawn or otherwise dissipated, in order to preserve the *status quo* until such time as this matter can be fully and finally adjudicated. Without said relief, the defendants' wrongful actions will continue unabated, the defendants will secrete, transfer, pledge, withdraw, abscond with or otherwise dissipate their assets, and Plaintiffs will continue to suffer irreparable harm as a result thereof, as discussed in Second Cause of Action of this Verified Complaint.

## II.  JURISDICTION AND VENUE.

11.  This Honorable Court has jurisdiction over the matters alleged in this Verified Complaint pursuant to 28 U.S.C. §1332, inasmuch as the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and no Plaintiff resides in the same state as any of the defendants.

12.  This Honorable Court has supplemental jurisdiction over Plaintiffs' other claims pursuant to 28 U.S.C. § 1367 because all claims herein are so related that they arise from the same case or controversy under Article III of the Constitution of the United States.

13.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all of the defendants are subject to personal jurisdiction in this district; because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district; and because the ends of justice are met.

### III. <u>THE PARTIES AND RELATED PERSONS AND ENTITIES.</u>

14. CABO ROJO LAND ACQUISITION LLC (again, "**CRLA**") is a limited liability company organized and existing under the laws of Puerto Rico that contracted with defendants in the MOA and EPCF Agreement, whose sole owner was Plaintiff the Trust.

15. Plaintiff the CACHO-CAMBO TRUST (again, the "**Trust**") is a trust organized and existing under the laws of Puerto Rico, is the sole shareholder of CRLA, whose sole beneficiary is Natalia Cacho-Cambó, and whose sole trustee is Mr. Roberto Cacho, and was the former owner of CLRA.

16. Plaintiff GRUPO CACHO, INC. ("**GCI**"), is a corporation organized and existing under the laws of Puerto Rico with its offices at 1760 Loiza Street, Suite 303, San Juan, Puerto Rico and its mailing address at P.O. Box 16845, San Juan, Puerto Rico 00908, that served as Managing Partner of CRLA and Plaintiff the Trust; provided the $750,000.00 that was advanced by CLRA to defendant DHC between November and December of 2020, and enjoys a good reputation in Puerto Rico as a real estate developer.

17. ROBERTO M. CACHO ("**Mr. Cacho**"), of legal age, married, businessman, and resident of San Juan, Puerto Rico, is the former president of CLRA and GCI, the Trustee of Plaintiff the Trust, and is one of Puerto Rico's most experience developers of tourism projects, having developed the W Hotel in Vieques, Puerto Rico; the former Dorado Hilton Hotel in Dorado, Puerto Rico; and the AIG Tower in Hato Rey, Puerto Rico, among many other major projects, and enjoys a good reputation in Puerto Rico as a real estate developer.

18. Defendant DAWN HOLDING COMPANY, LLC (again, "**DHC**"), according to its web page, is "… a Project Funding and Project Management Company with initial registration in Dallas, Texas"; that "… works with its own diversified multinational Consortium and funds on

CIVIL NO. _____ (__); *Cacho-Cambo Trust and Grupo Cacho, Inc. v. Dawn Holding Company, LLC,* et al.
VERIFIED COMPLAINT
Page 8

EPCF mode on Guarantees; that operates in other foreign jurisdictions; and that has its principal

place of business and mailing address at 709 Business Way, Wylie, Texas 75098.

19.  Defendant "Minister of Peace" KAUSHAYLA SIRIWARDANA (again,

"**Siriwardana**"), is of legal age, single, businesswoman, and, upon information and belief, a

resident of the State of Texas.

20.  "Minister" Siriwardana, is identified in DHC's website as "President/CEO" of DHC,

and as "Hon. Kaushayla Siriwardana, Minister of Peace-HHIDM" and "the Founder, CEO,

Chairman of Helping Hands, Inc.," an international charity, and was the person who represented

to CRLA that the "SERVICES" to be provided to CRLA by defendant DHC were going to be

offered and the person who established all of the conditions and timetable to execute the

payments and deliver the Services to CRLA.

21.  Defendant Siriwardana is a native of Sri Lanka.

22.  Defendant Siriwardana claims to have:

> ... worked tirelessly to bring attention to the needs of impoverished
> children throughout the world ... [and] ... Growing up in Sri Lanka,
> Kausha saw firsthand the disastrous conditions of poverty and the manner
> in which it can harm the lives of children.  As a child she would freely
> share all she had with disadvantaged children and the needy within her
> young reach.  That generous heart and genuine love for children is what
> continues to fuel her passion.  Although she has been a citizen of the
> United States for well over 30 years, Kausha has never forgotten what she
> saw during her early years.  She has made it her life's mission to combat
> these conditions and shepherd children across the globe toward a brighter
> future.

22.  DHC's website, extolling the virtues of "Minister" Siriwardana, can be seen at:

https://www.wef.org.in/mrs-kaushalya.siriwardana/; and https://www.prnda.org/;

https://hhcharity.org/.

23.  Defendant HELPING HANDS, INC. ("**Helping Hands**"), is a not-for-profit corporation organized and existing under the laws of the State of Texas, with its mailing address and principal place of business at 6060 N. Central Expressway, 5th Floor, Dallas, Texas 75206.

24.  Helping Hands was founded in 2003 by defendant Siriwardana.

25.  Helping Hands describes itself as "Helping Hands Inc. Humanitarian All Nations Diplomatic Mission, or "**HHIDM**."

26  Defendant Siriwardani identifies herself as the "Minister of Peace" of HHIDM.

27.  TARINAN VON ANHALT ("**von Anhalt**") is identified on DHC's website as its Vice-President and Helping Hands' "Contact" who is identified as "Tarinan, Princess von Anhalt, Director irector Head of Media Administration" reachable at princesst@hhcharity.org and admin@hhcharity.org, who is, upon information and belief, of legal age, single, a businesswoman, and a resident of the United Kingdom, residing in England.

28.  Messrs. JAMES THOMPSON and RON MILLER were also deeply involved throughout the entire transaction and represented to Plaintiff Cacho that they were members of DHC's Board of Directors, and both are identified on DHC's website as "Special Envoy for CEO [Siriwardana]."

29.  BENIQUE SERVICES, LLC is a limited liability company organized and existing under the laws of Puerto Rico owned by Josê Manuel Rodriguez, that was a financial advisor to Plaintiffs.

30.  JOSE MANUEL RODRIGUEZ, of legal age, married/single, businessman, and resident of Puerto Rico, is the president of Benique Services, LLC.

31.  Defendants JANE DOE and JOHN ROE, of legal age and residents of a state other than Puerto Rico, are identified with fictitious names because their true names and/or identities

are unknown at present, are natural and/or artificial persons, who are included in this Verified

Complaint because of the belief that they are accountable for the facts and damages that are

described below.

32.  Defendants ABC CORP. and DEF, LLC are corporations alleged to be part of the

defendants' "International Consortium," and include various banks, lenders, and investors.

33.  MICHAEL LYNCH was a financial broker who would have been a defendant herein

had he not committed suicide in 2022; he was to have received approximately $4-5 Million as a

fee from the transactions contemplated in the MOA and the EPCF Agreement had he not done

so.

34.  The defendants' conduct their operations through the utilization of internet-based

platforms and electronic communications to consumers within the United States and its

territories, including in Puerto Rico.

35.  Each of the defendants has the capacity to be sued pursuant to Rule 17(b) of the

Federal Rule of Civil Procedure.

36.  The PRINCIPALITY OF MONTE DE AGRELLA is a fictitious country of which

defendant Siriwardana claims to be the "Minister of Peace."

37.  According to December 14, 2019, accounts of fraud in the United Nations from Inner

City Press (emphasis added):

> ... a UN diplomat who helped previously UN briber Francis Lorenzo launder money,
> Carlos Garcia, ... is still misusing the UN name, selling fraudulent coins in South
> Korea ... [and that] an entire country, entirely fraudulent, promoted through [UN
> Secretary General Antonio] Gutierrez [is] focused on covering up his own links to
> UN bribery ... [and that] ***[t]ying it all together [wa]s <u>Kaushalya Siriwardana</u>***, then
> the "Minister of Peace" of the Principality Monte de Agrella, who used convicted UN
> briber Ng Lap Seng's South-South News ..."

38.  JOSÉ HERNAN BATRES ("**Batres**") is a lawyer for DHC and Siriwardana, whose email address is hernanbatresjr@gmail.com and who, upon information and belief, is of legal age, married, an attorney, and a resident of Honduras.

39.  Upon information and belief, the defendants are part of an interrelated group working in concert to knowingly and willfully engage in improper and illegal conduct, including engaging in a pattern of racketeering activity, including money laundering, mail fraud, and wire fraud, carried out through illegal enterprises, including Helping Hands, in violation of the Organized Crime Control Act of 1970, also known as the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, better known by the acronym RICO.

40.  The true identities of other potential defendants are presently unknown, but Plaintiffs have been advised that the defendants' pattern of racketeering activity was implemented through the actions of its CEO and resident agent, defendant Siriwardana.

## IV. <u>FACTS COMMON TO ALL CAUSES OF ACTION.</u>

### A. <u>The Plaintiffs meet the defendants.</u>

41.  On or around April 2020, CRLA was approached by Mr. Michael Lynch, a financial broker from the mainland USA (hereafter, "**Mr. Lynch**").

42.  Mr. Lynch had been introduced to Mr. Cacho by Mr. Michael Mutter, a former employee of Plaintiff GCI.

43.  In April 2020, Mr. Lynch represented to Mr. Cacho that Lynch was working for, or in conjunction with, Dawn Holding Company (DHC) to identify suitable "multibillion" dollar EPCF projects.

44.  EPCF agreements are a type of construction agreement that provides for an entity to provide engineering , procurement, construction, and funding (EPCF) services for very large construction projects around the globe.

**B.  The Memorandum of Agreement (MOA).**

45.  On August 3, 2020, CRLA and defendant DHC executed the MOA.

46.  **Exhibit 1** hereto is a genuine copy of the executed MOA.

47.  The MOA was signed for defendant DHC "by its Presidet/CEO Hon. Kaushalya Siriwardana, Minister of Peace-HHIDM and CEO."

48.  The MOA was signed for CRLA, the owner of the Project,  by its President, Mr. Cacho.

49.  The essential provisions of the MOA were expressed in its Section I.  <u>PURPOSE OF THIS MOA</u> [emphasis in original; underlining and bracketed material added]:

> **"PARTY A"** [DHC to] Facilitate via its International Consortium and as consultant for <u>financial instruments</u> (Project-Based Funding (PBF)), provide for **Party B** to obtain a PBF from a top rated bank in the amount of **Two Hundred Fifty Million USD (250,000,000.00 USD)** for the sole purpose of EPCF PBF to DHC as beneficiary for project funding.  This PBF will be obtain [sic] 25 business days after admiinstrative fees of One Point Four Percent (1.4%) of Face Value of PBF paid to IC/DHC.  PBF will be valid for one year and one day.  Administrative fees (AF) will be of clean, non-commercial origin.  DHC will accept execution of the agreement as delivery of the PBF 25 business days AF bank confirmation paid.  Per EPCF agreement (DHCGRC07282020432ME1), DHC will invest Two Million Seven Hundred Fifty Thousand USD (2,25,000.00 USD) towards a PBF of Two Hundred Fifty Million USD (250,000,000.00 USD) for twenty five percent shares in **Party B**'s submitted EPCF project.  **Party B** will pay AF of **Seven Hundred Fifty Thousand USD (750,000.00 USD)** toward PBF of Two Hundred Fifty Million USD (250,000,000.00 USD).  <u>**Failure to obtain a PBF within 25 business days will cause a full refund of AF to PARTY B within two banking days**</u>.

50.  Section 3 of the MOA (RESPONSIBILITIES OF "PARTY A") provided that

defendant DHC:

> Warrants that it has the ability and resources to arrange through
> International Consortium (IC), associates, contracts and sources, with full
> corporate responsibility, credit funds that are clean, clear and readily
> available to provide a credit facility to **"PARTY B" on EPCF Project-
> Based** for available sustainable programs.

51.  Subsequent to the execution of the MOA, on December 17, 2020, Plaintiff CLRA

made its final payment to complete its $750,000.00 share of the Administrative Fee.

52.  **Exhibit 2** hereto contains documents showing the payment of CLRA's portion of the

Administrative Fee to defendant DHC.

53.  Defendant DHC never paid anything for DHC's Administrative Fee Portion

necessary to obtain the Facility, as required by paragraph 1 of the MOA.

54.  The MOA stated in its first clause that:  "***Failure to obtain a PBF within 25***

***business days or no later than 30 business days will cause a full refund of AF to PARTY B***

***[Plaintiff] within two banking days***."

**C.  The EPCF Agreement.**

55.  On August 9, 2020, CRLA executed, and on August 10, 2020, DHC executed

another agreement dated August 3, 2020, entitled:  "Engineering, Procurement, Construction and

Funding (EPCF) Agreement" (the "**EPCF Agreement**").

56.  The EPCF Agreement was drafted by defendant DHC and tendered to CRLA for its

execution.

57.  **Exhibit 3** hereto is a genuine copy of the EPCF Agreement.

58.  In Clause A of the EPCF Agreement, the project was described as the "***Cabo Rojo***

***Resort, Spa, Land Purchase (911-Acres) and White Sandy Beachfront Development*** (the

"**Project**" and the "**Facility**").

59.  In Clause B of the EPCF Agreement, DHC was identified as the EPCF project consultant.

60.  In Clause C of the EPCF defendant DHC obligated itself to obtain the "Facility" and to perform the "design, engineering, construction, procurement and finance (EPCF) mode work to bring the Facility to commercial operation, all pursuant to contract with Owner [CRLA]."

61.  The "Facility" that defendant DHC committed to provide CRLA was to be FOUR HUNDRED THIRTY MILLION EUROS (€432,000,000.00) in funding for the Project.

62.  In Clause C of the EPCF Agreement, DHC agreed to be the Consultant on all aspects of EPCF Project-Based funding in this project. DHC consultancy will cover all aspect of the project from start to final completion of EPCF Project-Based funding."

63.  ARTICLE 15 of the EPCF Agreement (GOVERNING LAW; INTERPRETATION) provided (emphasis supplied) that the laws of Dallas, Texas, were to be applied to construe the Agreement, except that: "In jurisdictions where the hosting country's [Puerto Rico's] government has an interest (i.e. permits, regulations, building standards, etc.), ***this agreement is subject to hosting country's laws and regulations***."

64.  ARTICLE 16 (MISCELLANEOUS) of the EPCF Agreement, in Article 16.2, required that the parties were bound by the tenets of "Good Faith and Fair Dealing."

65.  Defendant "Minister of Peace" Siriwardana took it upon herself – without obtaining the consent of CLRA, the Trust, GCI or Mr. Cacho – to become directly involved in the negotiation  with the Puerto Rico Tourism Company's Executive Director, Mrs. Carla Campos, for a tax credit of ONE HUNDRED NINETY-THREE MILLION Dollar ($193,000,000.00),that was offered to the Project if it were built, as per the existing incentives contained within Puerto Rico's

existing Tourism Incentive Program (hereafter, the "**Tax Credits**").

66.  Credits such as the Tax Credits can be sold on the open market, generally for around Ninety Percent (90%) of their face value.

67.  **Exhibit 4** is a genuine copy of documents evidencing the Tax Credits.

68.  The value to CRLA and the Plaintiffs of the Tax Credits was to be approximately ONE HUNDRED SEVENTY-THREE MILLION DOLLARS ($173,000,000.00.  (hereafter, the "**Tax Credits Value**").

69.  Upon information and belief, the CRLA's Administrative Fee Portion was used by "Minister of Peace" Siriwardana for her personal benefit, and squandered on bogus "lenders" and "investors" by defendant Siriwardana, some of whom may be named as defendants in this case.

70.  By December 2020, CLRA had deposited with defendant DHC CLRA's Administrative Fee Portion of $750,000.00.

71.  Defendant DHC accepted from CRLA's Administrative Fee Portion.

72.  With accrued interest, the amount that Plaintiff GCI had to pay the lenders of the $750,000.00 used to pay DHC CLRA's Administrative Fee now exceeds the sum of ONE MILLION DOLLARS ($1,000,000.00).

73.  Because defendant DHC never obtained the Facility, Plaintiff CLRA was forced to sell the Project by selling CLRA in order to repay the third-parties who had loaned it the funds for CLRA's Administrative Fee Portion.

74.  Because it had to sell CLRA as a result of the actions of defendants DHC, Helping Hands, and Siriwardana, neither CLRA, the Trust or GCI could sell the Tax Credits.

75.  As of the date of the filing of this Verified Complaint, Plaintiffs have made multiple requests of defendants DHC and Siriwardana for the return of CRLA's Administrative Fee.

D.  **The November 2020 Letter.**

76.  By letter to Mr. Cacho, as CRLA's president, dated November 30, 2020 (the

"**November 2020 Letter**"), defendants DHC and Siriwardana assured them that DHC had

received the totality of the Administrative Fee from CRLA and assured them that: "... in 3

banking days, DHC will give an additional [$]200,000.00 for the lender and $50,000 for José

Manuel Rodriguez, President Benique Services, LLC."

77.  **Exhibit 5** is a genuine copy of the November 2020 Letter.

78.  In the November 2020 Letter, DHC/Siriwardana represented that: "Upon receipt of

the entire balance to our account, in 3 banking days, we will immediately send $900,000.00 to

you."

79.  The November 2020 Letter was copied to defendant Rodriguez and to Princess von

Anhalt, Mr. Ron Miller, Lokesh Arnaranayaka (DHC's CFO), Krishna Kalptaru (DHC's Deputy

CFO), and Mr. Morgan.

E.  **The November 2021 Letter.**

80.  By letter to CRLA's president, Mr. Cacho, dated November 18, 2021 (the

"**November 2021 Letter**"), defendants DHC and Siriwardana advised them that:

> [W]e explained that we now have a solid commitment from the
> Financial Institutes with a fixed contractual date in which we will receive
> funds so all can be satisfied.  It will take 10 international banking days
> from Monday in which our funds will be wired to our Texas account and
> immediately we will show proof of wire sent to you.  Please also allow the
> time once it reaches our account to then wire out to you.
>
> Unfortunately, we are under a very strict NDA which prevents me from
> sending you a copy of our contract at the moment.  However, for these
> extra days we are asking you to kindly wait, we would like to add an
> additional $50,000 to the $900,000 for the total sum of $950,000.

81.  **Exhibit 6** is a genuine copy of DHC's November 18, 2021, letter to CLRA.

82.  The November 2021 Letter was signed by defendant Siriwardana as "CEO/Secretary General Chair / President" of "Helping Hands, Inc. Humanitarian All Nations Diplomatic Mission" and as "CEO/President" of DHC.

   **F.  No EPCF financing and no return of the $750,000.00 Administrative Fee.**

83.  As of the date of the filing of this Verified Complaint, neither any part of CRLA's Administrative Fee Portion nor any part of the $950,000.00 promised by defendants DHC and Siriwardana in the November 2020 Letter, has ever been returned by any of the defendants to any of the Plaintiffs.

84.  Defendants DHC, Helping Hands, and Siriwardana enticed other victims such as CLRA and the Plaintiffs herein and perpetrated frauds upon those other victims by offering significant external investment and consulting to them, thus establishing a "pattern" of conduct.

## V.  CAUSES OF ACTION.

### FIRST CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR DECLARATORY RELIEF]

85.  The allegations contained in paragraphs 1 through 84 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

86.  Section 6 (EQUITABLE RELIEF) of the MOA provides (emphasis in original):

> Both **Party A** and **Party B** agree that in the event of any breach of this **MOA** by any **Party**, the circumvented **Party** shall be entitled to equitable relief including without limitation injunction, maximum consideration, benefits and commission it would realize from said circumvented transaction, any and all reasonable expenses, including but not limited to all reasonable legal costs and expenses incurred to recover lost revenue, and the violating or circumventing Party shall not oppose the granting of such relief.

CIVIL NO. _____ (__); *Cacho-Cambo Trust and Grupo Cacho, Inc. v. Dawn Holding Company, LLC,* et al.
VERIFIED COMPLAINT
Page 18

87.  Because this Verified Complaint alleges that the defendants, in particular, defendant DHC, breached the MOA and the EPCF Agreement, the laws of Puerto Rico apply to the matters alleged in this Verified Complaint.

88.  In doing the things alleged, in particular, in failing to return the sum of $900,000.00 Administrative Fee plus, as set forth above, the defendants, in particular, defendant DHC, breached the MOA, and defendants DHC and Helping Hands breached the EPCF Agreement.

WHEREFORE, Plaintiffs very respectfully request that this Honorable Court DECLARE:

A. that defendant DHC has committed material breaches of the MOA and the EPCF Agreement by:  (1) failing to obtain the Facility; (2) failing to return to CRLA CRLA's Administrative Fee Portion ($750,000.00) upon the demand of CRLA and the Plaintiffs threrefor;

B. that defendants DHC's, Helping Hands', and Siriwardana's conduct is fraudulent, unlawful, and in violation of legal statutes identified in this Verified Complaint;

C. that Plaintiffs are entitled to receive from the defendants, jointly and severally, compensatory and general damages in the amount of CRLA's Administrative Fee Portion, as well as any and all consequential damages and lost profits in the amount of the Tax Credits Value, all to be determined according to proof during the trial of this matter, as a remedy for the fraud, breach of contract, conversion, and unlawful withholding of money.

D. that Plaintiffs are entitled to exemplary and punitive damages, if applicable, against all defendants, jointly and severally, in their individual and/or representative capacities, in an amount to be determined at trial, in light of the defendants' willful, wanton, and malicious acts with conscious disregard of Plaintiffs' rights;

E. that Plaintiffs are entitled to full costs, expenses, and attorneys' fees incurred by them in pursuing this case because of the defendants' temerity; and

F. that Plaintiffs are entitled to pre-judgment interest and post-judgment interest on

CRLA"s Administrative Fee Portion and the Tax Credits Value.

## SECOND CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR
### PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF]

89. The allegations contained in paragraphs 1 through 88 of this Verified Complaint are

incorporated herein by this reference as if again fully set forth by Plaintiffs.

90. Section 6 (EQUITABLE RELIEF) of the MOA provides (emphasis in original)

> Both **Party A** and **Party B** agree that in the event of any breach of this
> **MOA** by any **Party**, the circumvented **Party** shall be entitled to equitable
> relief including without limitation injunction, maximum consideration,
> benefits and commission it would realize from said circumvented
> transaction, any and all reasonable expenses, including but not limited to
> all reasonable legal costs and expenses incurred to recover lost revenue,
> and the violating or circumventing Party shall not oppose the granting of
> such relief.

91. As a direct and proximate result of defendants' fraudulent conduct, Plaintiffs have

sustained and will continue to sustain substantial and irreparable injury, for which there is no

adequate remedy at law, unless defendants' fraudulent conduct is enjoined by this Court, the

defendant will continue to wrongfully restrain Plaintiffs' assets and deny Plaintiffs from

recouping profits and continuing to do business.

92. As a direct and proximate result of defendants' fraudulent conduct, Plaintiff the Trust

has been irreparably harmed in its business reputation in the real estate development industry in

Puerto Rico.

93. As a direct and proximate result of the conduct of defendants DHC, Helping Hands,

and Siriwardana, they have breached of the MOA and the EPCF Agreement, and caused Plaintiff

CIVIL NO. _____ (__); *Cacho-Cambo Trust and Grupo Cacho, Inc. v. Dawn Holding Company, LLC*, et al.
VERIFIED COMPLAINT
Page 20

CGI has suffered irreparable harm to its reputation in the real estate development industry in

Puerto Rico.

94.   Plaintiffs the Trust and GCI have literally had for more than two (2) years no access

to their moneys ($750,000.00) that were borrowed and paid to defendant DHC as CRLA's

Administrative Fee Portion, and are therefore unable to conduct necessary business transactions,

thus causing damage to Plaintiffs, their brand, image, and reputations, and causing them

profound damage and irreparable harm in the real estate development industry in Puerto Rico.

95.   Plaintiffs have a substantial likelihood in prevailing on the merits of their claim for

permanent injunctive relief against the defendants.

96.   Plaintiffs are without an adequate remedy at law, and have the right to do business.

97.   In considering the balance of the equities in the contect of injunctive relief, Plaintiff

the Trust and GCI will suffer considerably more harm than defendants if the defendants are able

to secrete, transfer, pledge, withdraw, abscond with or otherwise dissipate their assets, including

CRLA's Administrative Fee Portion, which is necessary to finance the business operations of

Plaintiffs.

98.   Public policy in Puerto Rico strongly favors compelling parties to comply with their

contractual obligations and abhors fraudulent conduct in conducting them.

99.   Defendants DHC, Helping Hands, and Siriwardana are jointly and severally liable to

Plaintiffs for their reprehensible, bad faith, and illegal conversion of Plaintiffs' $750,000.00

WHEREFORE, Plaintiffs very respectfully request that this Honorable Court:

A. ENJOIN defendants Siriwardana, DHC, and Helping Hands from secreting,

transferring, pledging, withdrawing, absconding with or otherwise dissipating their assets,

including CLRA's Administrative Fee Portion, or making use of any funds on deposit in the

names of any of them – defendants DHC, Helping Hands, and Siriwardana and any related or

affiliated companies owned or controlled by any of them – until this case has been fully and

finally adjudicated;

B. ENJOIN defendants DHC and Helping Hands from soliciting or receiving any

additional funding from the United Nations or any third-party; and.

C.  GRANT such further injunctive relief as to this Honorable Court seems appropriate

under the circumstances.

## THIRD CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR CIVIL CONSPIRACY]

100.  The allegations contained in paragraphs 1 through 99 of this Verified Complaint are

incorporated herein by this reference as if again fully set forth by Plaintiffs.

101.  According to *Hernandez-Cuevas v. Taylor*, 2014 WL 12626352, *2 (D. Puerto

Rico, Sept. 17, 2014) (internal quotations omitted):

> A civil conspiracy is a combination of two or more persons acting in
> concert to commit an unlawful act, or to commit a lawful act by unlawful
> means, the principal element of which is an agreement between the parties
> to inflict a wrong against or injury upon another, and an overt act that
> results in damages . . . [and constitutes] an actual abridgment of some
> federally-secured right.

102.  Upon information and belief, the defendants have conspired to benefit only

themselves by failing to provide the Facility and by converting Plaintiff CLRA's payment of the

money paid for its portion of the Administrative Fee for said defendants' own purposes.

103.  Defendants' conspiracy not only damages Plaintiffs' ability to make do business,

but deprived Plaintiffs of the right to develop the Project, sell the Tax Creditss, of conduct other

business, forcing Plaintiff the Trust to sell its ownership interest in CRLA – and thereby, the land

for the Project and the Tax Credits – at a tremendous loss in order to salvage anything after

defendants DHC and Helping Hands failed to comply with their obligations under the terms and

conditions of both the MOA and the EPCF Agreement.

104.  In doing the things alleged, defendants DHC, Helping Hands, and Siriwardana, and

other defendants, conspired to deprive CLRA and  Plaintiffs of CLRA's Administrative Fee

Portion.

105.  Defendant DHC's material breaches of the MOA and its and defendant Helping

Hands' breaches of the EPCF Agreement entitle Plaintiffs to recover from defendants DHC,

Helping Hands, and Siriwardana, jointly and severally, for their abridgement of its right to its

property, including its portion of the Administrative Fee and the Tax Credits.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against

all defendants, jointly and severally, in the amount of TWO HUNDRED MILLION DOLLARS

($200,000,000.00), plus the costs of this action, reasonable attorneys' fees, and such other and

further relief as to this Honorable Court seems appropriate under the circumstances.

## FOURTH CAUSE OF ACTION

## [AGAINST ALL DEFENDANTS FOR FRAUD]

106.  The allegations contained in paragraphs 1 through 105 of this Verified Complaint

are incorporated herein by this reference as if again fully set forth by Plaintiffs.

107.  As held in  *Wadsworth, Inc. v. Schwarz-Nin*, 951 F. Supp. 314, 322 (D. Puerto Rico

1996) (internal quotations omitted):

> [C]ourts will not allow directors or officers to use the corporate shield to
> protect them while they use the corporation to defraud others.  Where the
> directors or officers use the corporation to commit fraud, courts will pierce
> the corporate veil and hold those officers or directors personally liable..  A

plaintiff hoping to persuade a court to pierce the corporate veil must
establish that the directors acted with intent to defraud and that the creditor
cannot collect from the corporation the debt owed them.

108.  As set forth in applicable jurisprudence, including *In re Fin. Oversight & Mgmt. Bd.*

*for Puerto Rico* F. Supp. 3d, 2021 WL 7162427, *8 (D. Puerto Rico Dec. 27, 2021) (citing

*Microsoft Corp. v. Comput. Warehouse*, 83 F. Supp. 2d 256, 262 (D. Puerto Rico 2000) and

*Wadsworth, Inc. v. Schwarz-Nin*, 951 F. Supp. 314, 323 (D. Puerto Rico 1996)):

> "To state a claim for fraud under Puerto Rico law, a plaintiff must allege
> '(1) that a false representation was made; (2) that the plaintiff reasonably
> and foreseeable relied thereon; (3) that the plai ntiff was injured by his
> reliance; and (4) that the defendant intended to defraud the plaintiff.'; a
> plaintiff must also "set[] forth specific facts that make it reasonable to
> believe that defendant knew that a statement was materially false or
> misleading." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st
> Cir. 2013).

109.  Rule 9(b) of the  Federal Rule of Civil Procedure requires a party alleging fraud or

mistake to "state with particularity the circumstances constituting fraud or mistake." The plaintiff

must "specify the who, what, where, and when of the allegedly false or fraudulent

representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (`In

general, in order to prove an intent to defraud, a plaintiff must show either that the defendant

intended to receive a benefit or intended to cause actual or potential loss to the plaintiff.'

*Wadsworth, Inc. v. Schwarz-Nin*, 951 F. Supp. 314, 326–27 (D. Puerto Rico 1996)."

110.  As set forth above, defendant Siriwardana represented to Plaintiffs that defendant

Helping Hands was the recipient of many millions of dollars in funding from the United Nations.

111. In fact, on the website of defendant Helping Hands, at www.hhidm.org, it states:

> Realizing children are our most valuable resource,
> H[elping]H[ands][I[nc.][D]iplomatic[M]ission [HHIDM] is dedicated to
> providing food, shelter, clothing, health care and, education to the
> homeless and orphaned children of the world's most destitute places.

> Through love and education, we are committed to help future generations
> break the devastating cycle of poverty Helping Hands Inc. Humanitarian
> All Nations Diplomatic Mission is a non-profit 501(c)(3), non-religious
> and non-political organization, which considers elders and children to be
> our most valuable treasure.  We are dedicated to providing food, shelter,
> clothing, health care, and eduction to the homeless and orphaned children
> from our local communities and around the world.

112.  Defendants DHC, Helping Hands, and Siriwardana represented that their "International Consortium" was a huge network spanning the globe that financed EPCF projects throughout the world, and that they were highly experienced in such projects as the Project.

113.  In fact, said defendants were utlizing the Project as a "guinea pig" to obtain "administrative fees" from project developers to enrich said defendants.

114.  In fact, there was no "International Consortium."

115.  In fact, defendants DHC's, Helping Hands', and Siriwardana's representations to Plaintiffs that DHC had direct access to an "International Consortium" to obtain the Facility was false.

116.  In fact, defendants DHC, Helping Hands, and Siriwardana had no experience in performing EPCF agreements and the projects contemplated therein.

117.  Prior to his death, Michael Lynch made a list of *hundreds* of emails, texts, and voice mails, and sent them to the Dallas, Texas, Federal Bureau of Investigation (the "**FBI**"), and provided a copy for Mr. Cacho of all of what he provided to the FBI.

118.  Plaintiff Mr. Cacho engaged in communications with the FBI.

119.  Upon information and belief, the FBI continues investigating defendants DHC, Helping Hands, and Siriwardana.

120.  All of the Plaintiffs reasonably and foreseeably relied on the representations made by defendants DHC, Helping Hands, and Siriwardana as to their access to the International

Consortium to obtain the Facility, and on their prevarication and mendacity about their ability to attract the Facility promised for the Project.

121.  Defendants HDC, Helping Hands, and Siriwardana knew the foregoing statements were false when making them, and intended for Plaintiffs to rely on the false statements in order to gain substantial control over Plaintiffs' portion of the "required" Administrative Fee.

122.  As a direct and proximate result of the fraudulent conduct of, *inter alia*, defendants DHC, Helping Hands, and Siriwardana, Plaintiffs have been harmed and are thus entitled to:

A.  Recover CRLA's Administrative Fee Portion ($750,000.00);

B.  Recover the additional $150,000.00 promised to be returned by defendant DHC within three (3) days of CRLA's Administrative Fee Portion, for a total of NINE HUNDRED THOUSAND DOLLARS ($950,000.00), including the sum of FIFTY THOUSAND DOLLARS ($50,000.00) that was to have been paid for Mr. Rodriguez, plus prejudgment and post-judgment interest thereon;

C.  Recover such additional damages as this Honorable Court considers just and proper for defendants' fraudulent representations and mismanagement of CRLA's Administrative Fee Portion and Plaintiffs' assets, including the Tax Credits of $193,000,000.00.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment, jointly and severally, against all defendants in the amount of TWO HUNDRED MILLION DOLLARS ($200,000,000.00), plus the costs of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

CIVIL NO. _____ (__); *Cacho-Cambo Trust and Grupo Cacho, Inc. v. Dawn Holding Company, LLC,* et al.
VERIFIED COMPLAINT
Page 26

## FIFTH CAUSE OF ACTION

### [AGAINST DEFENDANTS HDC, HELPING HANDS, AND SIRIWARDANA FOR FRAUDULENT INDUCEMENT TO CONTRACT]

123.   The allegations contained in paragraphs 1 through 122 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

124.   According to *Stockdale v. Doral Fin. Corp.*, 2009 WL 3066638, *15 (D. Puerto Rico, Sept. 18, 2009):  A claim for fraudulent inducement requires the same elements discussed above: "(1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud."

125.   The representations by defendants DHC, Helping Hands, and Siriwardani as to their access to the alleged "International Consortium" and their ability to obtain the Facility with which to finance the Project were false.

126.   The Plaintiffs reasonably and foreseeably relied on those representations in entering into the MOA and the EPCF Agreement and in paying CRLA's Administrative Fee Portion.

127.   By their reliance on said defendants' false representations as aforesaid, the Plaintiffs suffered profound injuries, as set forth above.

128.   In making the fraudulent representations thus alleged, defendants DHC, Helping Hands, and Siriwardana intended to fraudulently induce the Plaintiffs into entering into the MOA and the EPCF Agreement and paying CRLA's portion of the Administrative Fee to DHC.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against all defendants, jointly and severally, in the amount of TWO HUNDRED MILLION DOLLARS ($200,000,000.00), plus the costs of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

## SIXTH CAUSE OF ACTION

## [AGAINST ALL DEFENDANTS FOR *DOLO*]

129.  The allegations contained in paragraphs 1 through 128 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

130.  According to *Burk v. Paulen*, 100 F. Supp. 3d 126, 134 (D. Puerto Rico 2015) [citing *Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp.*, 92 F.Supp.2d 8, 19 (D. Puerto Rico 2000)]:

> Under Puerto Rico contract law, fraud that affects a contracting party is commonly referred to as "dolo" or deceit . . . dolo and fraud are not synonymous concepts, as "Puerto Rico's Supreme Court has described dolo as the genus and fraud as one of its several species alongside with deceit, false representations, undue influence, and other insidious machinations."

131.  Like fraud, dolo "is not presumed," and a plaintiff alleging dolo "need not strictly adhere" to the traditional elements of fraud, as "dolo can be found to exist without a finding of all of the necessary facts constituting fraud," *Id.* at 135; a plaintiff must, however, "sufficiently plead that [the defendant] acted with intentional fault or bad faith to deceive him when discussing the formation of an agreement between the parties.".

132.  By virtue of Defendants' tortuous acts set forth above, the defendants are liable to Plaintiffs, jointly and severally, for *dolo.*

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against all defendants, jointly and severally, in the amount of Two Hundred Million Dollars ($200,000,000.00), plus the costs of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

## SEVENTH CAUSE OF ACTION

## [AGAINST DEFENDANTS HDC, HELPING HANDS, AND SIRIWARDANA FOR NEGLIGENT MISREPRESENTATION]

133.  The allegations contained in paragraphs 1 through 132 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

134.  According to Puerto Rico law as established by the Supreme Court of Puerto Rico in *Adrian v. Mesirow Fin. Structured Settlements, LLC*, 736 F. Supp. 2d 404, 421 (D. Puerto Rico 2010), to prove negligent misrepresentation, a plaintiff must prove that:

> (1) the defendant made a false representation to the plaintiff;
>
> (2) the defendant had a pecuniary interest in making the statement;
>
> (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff;
>
> (4) the defendant breached that duty by failing to exercise due care;
>
> (5) the plaintiff justifiably relied on the representation; and
>
> (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.

135.  As extensively alleged above, defendants DHC, Helping Hands, and Siriwardana, *inter alia*, made false representations to the Plaintiffs about their access to an International Consortium and their ability to obtain the Facility and about paying DHC's Administrative Fee Portion.

136.  As set forth above, said defendants had a pecuniary interest in making the false representations, namely, to convert CRLA's Administrative Fee Portion to their own use.

137.  Said defendants had a duty to communicate truthful information to the Plaintiffs.

138.  Said defendants, at the very least, failed to exercise due care in the information they

provided to Plaintiffs regarding their access to an International Consortium and their ability to obtain the Facility for the development of the Project.

139.  As set forth above, Plaintiffs reasonably relied on the representations of said defendants with respect to their access to a International Consortium and their ability to obtain the Facility for the development of the Project.

140.  As set forth above, the Plaintiffs suffered a pecuniary loss as the direct and proximate result of their reliance upon the representations made by said defendants as to their. access to an International Consortium and their ability to obtain the Facility for the development of the Project.

141.  By virtue of Defendant's tortuous acts stated above, defendants are jointly and severally liable to Plaintiffs for Negligent Misrepresentation.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against all defendants, jointly and severally, in the amount of TWO HUNDRED MILLION DOLLARS ($200,000,000.00), plus the costs of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

## EIGHTH CAUSE OF ACTION

### [AGAINST DEFENDANTS DHC, HELPING HANDS, AND SIRIWARDANA FOR CONVERSION]

142.  The allegations contained in paragraphs 1 through 141 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

143.  According to *United States v. GZ Constr. St, Inc*., 155 F. Supp. 3d 147, 152 (D. Puerto Rico 2015) (internal quotations omitted):

> Under Puerto Rico law, conversion is not the simple acquisition of
> another's property, but the malicious and wrongful privation of the
> ownership rights, the illegal exercise, or the assumption of authority over
> another's property, thereby depriving the lawful owner or possessor,
> permanently or for an indefinite period, of its use and enjoyment.

144.  Defendant DHC's receipt of CRLA's Administrative Fee Portion ($750,000.00) with no intent to obtain the Facility for the Project constitutes the conversion of CRLA's Administrative Fee Portion, as the defendants have maliciously and wrongfully assumed authority over Plaintiffs' property, depriving Plaintiffs of their right to possess, use, and enjoy said property, and by the refusal of defendant DHC to return CRLA's Administrative Fee Portion..

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against defendants DHC, Helping Hands, and Siriwardana, jointly and severally, in the amount of TWO HUNDRED MILLION DOLLARS ($200,000,000.00), plus the costs of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

## NINTH CAUSE OF ACTION

### [AGAINST DEFENDANTS DHC, HELPING HANDS, AND SIRIWARDANA FOR UNJUST ENRICHMENT]

145.  The allegations contained in paragraphs 1 through 144 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

146.  According to *AIG Ins. Co.-Puerto Rico v. PetSmart Puerto Rico, LLC*, 2021 WL 4598107, *8 (D. Puerto Rico, May 20, 2021) (internal brackets omitted), there are five (5) elements to an unjust enrichment cause of action, that include: "(1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5)

absence of a legal precept excluding application of enrichment without cause."

147.  Defendants DHC, Helping Hands, and Siriwardana have been enriched by their conversion of the $750,000.00 paid by Plaintiff GCI for CRLA's Administrative Fee Portion.

148.  By making the payment of CRLA's Administrative Fee Portion to defendant DHC, Plaintiffs have sufffered a correlative loss of not less than $750,000.00.

149.  There is cleeary a nexus between the loss to Plaintiffs and the enrichment of defendants DHC, Helping Hands, and Siriwardana.

150.  There is no cause for such enrichment.

151.  There is no legal precept for the enrichment of said defendants excluding application of enrichment without cause.

152.  Notwithstanding the promises and commitments made by DHC in the EPCF Agreement, no defendant has ever provided ***any*** EPCF Project-Based funding for the Project.

153.  Notwithstanding the promises and commitments made by DHC in the EPCF Agreement, none of the defendants has ever returned any or all of the $750,000.00 Administrative Fee paid by CRLA, within two (2) days as agreed or at any other time.

154.  By virtue of the defendant's tortuous acts set forth above, Plaintiffs have been damaged in an amount no less than $750,000.00.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against defendants DHC, Helping Hands, and Siriwardana, jointly and severally, in the amount of TWO HUNDRED MILLION DOLLARS ($200,000,000.00), plus the costs of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

## TENTH CAUSE OF ACTION

### [AGAINST DEFENDANT DHC FOR PROMISSORY ESTOPPEL]

155.  The allegations contained in paragraphs 1 through 154 of this Verified Complaint

are incorporated herein by this reference as if again fully set forth by Plaintiffs.

156.  As held in *Int'l Paper Co. v. Farm Credit Corp.*, 760 F. Supp. 18, 20 (D. Puerto

Rico 1991) [citing *Santoni v. Fed. Deposit Ins. Corp.*, 677 F.2d 174, 179 (1st Cir. 1982)]:

> According to the First Circuit's interpretation of Puerto Rico's adoption of
> the doctrine of promissory estoppel through judicial decisions, the first
> essential element of promissory estoppel is a binding offer in the form of a
> promise. This promise must be definite and certain so that the promissory
> should reasonably foresee that it will induce reliance by the promisee or a
> third party.

157.  By virtue of Defendant's tortuous acts stated above, defendant DHC is liable to

Plaintiffs the Trust and GCI under the doctrine of promissory estoppel.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against

defendants DHC, Helping Hands, and Siriwardana, jointly and severally, in the amount of TWO

HUNDRED MILLION DOLLARS ($200,000,000.00), plus the costs of this action, reasonable

attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate

under the circumstances.

## ELEVENTH CAUSE OF ACTION

### [AGAINST DEFENDANTS DHC, HELPING HANDS, AND SIRIWADANA
### FOR EQUITABLE ESTOPPEL]

158.  The allegations contained in paragraphs 1 through 157 of this Verified Complaint are

incorporated herein by this reference as if again fully set forth by Plaintiffs.

159.  As established by this Honorable Court in *Candelario v. Metro. Life Ins. Co.*, 861 F.

Supp. 2d 23, 28 (D. Puerto Rico 2012), a plaintiff alleging equitable estoppel must establish that:

> (1) the party to be estopped made a definite misrepresentation of fact to another person having reason to believe that the other would rely upon it;
> (2) the party seeking estoppel relied on the misrepresentations to its detriment; and
> (3) the reliance was reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading."(internal brackets and quotations omitted)[,]

and (citing *Ortega Candelaria*, 661 F.3d 675, 679 (1st Cir. 2011)):

> A plaintiff must present evidence showing that the defendant had an 'improper purpose' or 'constructive knowledge of the deceptive nature of his conduct in the form of some definite, unequivocal behavior fairly calculated to mask the truth or to lull an unsuspecting person into a false sense of security.'

160.  Defendants DHC, Helping Hands, and Siriwardana misrepresented to Plaintiffs, among other things, that CRLA would obtain asubstantial benefits and that CRLA would be able to receive significant investment and consulting from said defendants throughout the process of the development of the Project.

161.  Plaintiffs reasonably relied on these misrepresentations in deciding to execute the MOA and the EPCF Agreement and in sending its $750,000.00 portion of the Administrative Fee.

162.  By virtue of the tortuous acts heretofore described, defendants DHC, Helping Hands, and Siriwardana are jointly and severally liable to Plaintiffs under the doctrine of equitable estoppel.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against defendants DHC, Helping Hands, and Siriwardana, jointly and severally, in the amount of TWO HUNDRED MILLION DOLLARS ($200,000,000.00), plus the costs of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

# TWELFTH CAUSE OF ACTION

## [*INDEBITATUS ASSUMPSIT*]

163.  The allegations contained in paragraphs 1 through 162 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

164.  *Indebitatus assumpsit* is the federal common-law cause of action for money had and received.

165.  According to *Inter-Island Ferry Sys. Corp. v. Puerto Rico Ports Auth.*, 2017 WL 4990556, *5 (D. Puerto Rico, Oct. 31, 2017), in order for a plaintiff to sustain the action for *indebitatus assumpsit*, it must "establish an express contract or facts and circumstances from which the law will raise an implication of a promise to pay[,]" and "[m]ore simply put, *indebitatus assumpsit* is a remedy that is only available when there was an express or implied contract between the parties under which one party fully performed and the other has yet to pay."

166.  The MOA and the EPCF Agreement were express contracts between CRLA and defendants DHC and Helping Hands.

167.  Notwithstanding the promises and commitments made by DHC in the MOA, no defendant has ever provided ***any*** EPCF Project-Based funding for the Project.

168.  Notwithstanding the promises and commitments made by DHCand Helping Hands in the EPCF Agreement, none of the defendants has ever returned any or all of CRLA's Administrative Fee Portion ($750,000.00) paid by Plaintiff GCI, within two (2) days as agreed or at any other time.

169.  By virtue of the tortuous acts of defendants DHC and Helping Hands, and others, as set forth above, including but not limited to defendants' misrepresentations and false promises, defendants are liable to Plaintiffs under the doctrine of *indebitatus assumpsit*.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against

defendants DHC, Helping Hands, and Siriwardana, jointly and severally, in the amount of TWO

HUNDRED MILLION DOLLARS ($200,000,000.00), plus the costs of this action, reasonable

attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate

under the circumstances.

### THIRTEENTH CAUSE OF ACTION

### [AGAINST DEFENDANTS DHC, HELPING HANDS,<br>AND SIRIWARDANA FOR COLLECTION OF MONEY]

170.  The allegations contained in paragraphs 1 through 169 of this Verified Complaint are

incorporated herein by this reference as if again fully set forth by Plaintiffs.

171.  As set forth throughout this Verified Complaint, Plaintiffs are entitled to the return of

CRLA's Administrative Fee Portion ($750,000.00), plus interest thereon, paid by Plaintiff GCI to

defendant DHC on behalf of CRLA.

172.  Notwithstanding the promises and commitments made by defendants DHC and

Helping Hands in the EPCF Agreement, no defendant has ever provided either the Facility or *any*

EPCF Project-Based Funding for the Project.

173.  Notwithstanding the promises and commitments made by defendants DHC and

Helping Hands in the MOA and in the EPCF Agreement, none of the defendants has ever returned

any or all of CRLA's Administrative Fee Portion ($750,000.00 + $150,000.00), within two (2)

days as agreed or at any other time.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demands judgment against

defendants DHC, Helping Hands, and Siriwardana, jointly and severally, in the amount of NINE

HUNDRED FIFTY THOUSAND DOLLARS ($950,000.00), plus the costs of this action, reasonable

attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

## FOURTEENTH CAUSE OF ACTION

### [AGAINST DEFENDANTS DHC AND HELPING HANDS FOR BREACH OF CONTRACT]

174.  The allegations contained in paragraphs 1 through 173 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

175.  Notwithstanding the promises and commitments made by defendant DHC in the MOA and by DHC and Helping Hands in the EPCF Agreement, no defendant has ever provided *any* EPCF Project-Based Funding for the Project.

176.  Notwithstanding the promises and commitments made by defendant DHC in the MOA and by defendants DHC and Helping Hands in the EPCF Agreement, none of the defendants has ever returned any or all of CRLA's Administrative Fee Portion, paid by Plaintiff GCI on CLRA's behalf, within two (2) days as agreed or at any other time.

WHEREFORE, Plaintiffs the Trust and GCI very respectfully demand judgment against defendants DHC, Helping Hands, and Siriwardana, jointly and severally, in the amount of NINE HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00 + $200,000.00), plus prejudgment and post-judgment interest thereon, the costs of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

CIVIL NO. _____ (__); *Cacho-Cambo Trust and Grupo Cacho, Inc. v. Dawn Holding Company, LLC*, et al.
VERIFIED COMPLAINT
Page 37

## FIFTEENTH CAUSE OF ACTION

### [REQUEST FOR PRE-FILING DISCOVERY IN ANTICIPATION OF AMENDING VERIFIED COMPLAINT TO INCLUDE CAUSES OF ACTION FOR VIOLATIONS OF CIVIL RICO

177.  The allegations contained in paragraphs 1 through 176 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiffs.

178.  It appears that defendant Siriwardana founded Helping Hands Inc. in 2002 to employ it as an "enterprise" to engage in a "pattern of racketeering activity" consisting of a series of "predicate acts" of money laundering, wire fraud, and mail fraud.

179.  Upon the completion of discovery in this case, if not sooner, it is Plaintiffs' intention to amend this Verified Complaint to include causes of action under the civil provisions of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (RICO), to recover the damages it has suffered at the hands of defendants DHC, Helping Hands, Siriwardana, and others, in all of their incarnations; the books and records of the various DHC/Helping Hands/Siriwardana network of companies, entities, and persons will surely reveal their fraudulent "scheme" in the conduct of the affairs of their businesses, in particular, that defendant DHC, to the profound detriment of Plaintiffs and other victims of their pattern of racketeering activity, caused profound damages to Plaintiffs and their other victims.

180.  In doing the things heretofore alleged, it appears to Plaintiffs that the defendants have engaged in actions which demonstrate a pattern of racketeering activity in violation of the civil provisions of the Racketeering Influenced and Corrupt Organizations Act, ("**Civil RICO**") utilizing Helping Hands as an "enterprise" through which to defraud developers and others, including Plaintiffs, out of millions and millions of dollars.

181.   Plaintiffs do not wish to make specific allegations as to the apparent violations of

Civil RICO without knowing more facts about the operation and management of defendant DHC,

Helping Hands, and their respective affiliates and subsidiaries.

182.   In order to ensure that it does not make allegations of violations of Civil RICO

against any of the defendants, or others, Plaintiffs would like to take limited discovery from

defendants DHC, Helping Hands, Siriwardana, and others, including their financial, banking,

employment, and corporate records.

183.   If Plaintiffs find sufficient evidence – which they believe they may already have, but

that there is a great deal more evidence to support RICO allegations – they will be entitled to

treble damages.

184.   In an amended Verified Complaint alleging violations of RICO, Plaintiffs and will

seek judgment, jointly and severally, against all defendants in the amount of SIX HUNDRED

MILLION DOLLARS ($600,000,000.00), plus the costs of this action, reasonable attorneys' fees, and

such other and further relief as to the Court seems appropriate under the circumstances.

WHEREFORE, Plaintiffs very respectfully requests that they be permitted to take

expedited discovery from, *inter alia*, defendants DHC, Helping Hands, and Siriwardana before

amending the instant Verified Complaint to allege causes of action under the provisions of Civil

RICO.

## SIXTEENTH CAUSE OF ACTION

### [AGAINST ALL DEFENDANTS FOR COSTS AND ATTORNEYS' FEES PURSUANT TO THE MOA AND FOR TEMERITY UNDER PUERTO RICO LAW]

185.   The allegations contained in paragraphs 1 through 184 of this Verified Complaint are

incorporated herein by this reference as if again fully set forth by Plaintiffs.

186.  Section 6 (EQUITABLE RELIEF) of the MOA provides (emphasis in original):

> Both **Party A** and **Party B** agree that in the event of any breach of this **MOA** by any **Party**, the circumvented **Party** shall be entitled to equitable relief including without limitation injunction, maximum consideration, benefits and commission it would realize from said circumvented transaction, any and all reasonable expenses, including but not limited to all reasonable legal costs and expenses incurred to recover lost revenue, and the violating or circumventing Party shall not oppose the granting of such relief.

187.  Because of defendant DHC's, defendant Helping Hands', and defendant Siriwardana's temerity and willful and malicious conduct, Plaintiffs are entitled to recover from them their damages, attorneys' fees, and expenses incurred in bringing this action.

WHEREFORE, Plaintiffs very respectfully request that this Honorable Court award them the costs of this action plus reasonable attorneys' fees for its prosecution.

## <u>UNSWORN STATEMENT UNDER PENALTY OF PERJURY</u>

I, Roberto M. Cacho, of legal age, married, businessman, and resident of San Juan, Puerto Rico. sole trustee of the Cacho-Cambo Trust, former president of Cabo Rojo Land Acquisition LLC, and president of Grupo Cacho, Inc., hereby state under penalty of perjury pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint and its supporting Exhibits in their entirety and that, to the best of my personal knowledge and belief, pursuant to the information and documents in possession of the Cacho-Cambo Trust and Grupo Cacho, Inc. and/or its employees, representative, and agents, all of the allegations in coutained in this Verified Complaint are true and correct.

*<u>S/Roberto M. Cacho</u>*
Roberto M. Cacho, Trustee of the
Cacho-Cambo Trust, president of Grupo Cacho,
Inc., former president of Cabo Rojo Land
Acquisition LLC, and personally

CIVIL NO. _____ (__); *Cacho-Cambo Trust and Grupo Cacho, Inc. v. Dawn Holding Company, LLC,* et al.
**VERIFIED COMPLAINT**
**Page 40**

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, on March 10, 2023.

WEINSTEIN-BACAL, MILLER & VEGA, P.S.C.
González-Padín Building - Penthouse
154 Rafael Cordero Street, Plaza de Armas
Old San Juan, Puerto Rico 00901
Telephone: (787) 977-2550
Telecopier: (787) 977-2559

By:     ***S/Stuart A. Weinstein-Bacal***
U.S.D.C. No. 204208

By:     ***S/Gorman A. Hatcher***
USDC No. 307106

**Of Counsel:**                          PROFESSOR G. ROBERT BLAKEY
*Pro hac vice motion to be filed.*       WILLIAM J. & DOROTHY T. O'NEIL
Professor of Law Emeritus
University of Notre Dame Law School
8630 E. Monterosa Avenue
Scottsdale, Arizona 85321-2949
Telephone: (574) 514-8220
Email: blakey.1@nd.edu

By:     ***S/G. Robert Blakey***
G. Robert Blakey
District of Columbia Bar No. 424844

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by a jury on all of the causes of action in this Verified

Complaint which are triable by a jury.

***S/Stuart A. Weinstein-Bacal***
Stuart A. Weinstein-Bacal