IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Cacho-Cambo Trust; and Grupo Cacho, Inc., <br><br>    Plaintiffs, <br><br> v. <br><br> Dawn Holding Company, LLC.; Mrs. Kaushalya Siriwardana; Healing Hands, Inc.; John Doe; ABC, Inc.; and Def, LLC. <br><br>    Defendants. | **Civil No. 23-01118 (GMM)** |

**MEMORANDUM AND ORDER**

Before the Court is Cacho Cambo Trust's ("Trust") and Grupo Cacho, Inc.'s ("GCI") (collectively, "Plaintiffs") *Plaintiffs' Motion for Prejudgment Attachment without Notice to Defendants* ("Motion for Prejudgment Attachment") and *Plaintiffs' Motion Submitting "Requisite Evidence to Substantiate Its Allegation of Extraordinary Circumstances."* (Docket Nos. 35 and 41). For the following reasons, the Court **GRANTS** Plaintiffs' motions.

I.   PROCEDURAL HISTORY

On March 10, 2023, Plaintiffs filed the *Verified Complaint* ("Complaint") against Helping Hands, Inc. ("Helping Hands"); Dawn Holding Company, LLC ("DHC"); and Kaushaylya Siriwardana ("Siriwardana"), President/CEO of DHC and Helping Hands, (collectively, "Defendants") and other unnamed defendants for fraud, civil conspiracy, *dolo*, conversion, unjust enrichment,

breach of contract, and alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, seeking $600,000,000 in damages. (Docket No. 1).

Following multiple fruitless efforts to personally serve Defendants, on May 17, 2023, Plaintiffs filed a *Motion Requesting Authorization to Execute Service of Summons by Publication*, which the Court granted the following day. (Docket Nos. 8 and 9). On June 1, 2023, the Summons by Publication was published in El Nuevo Día, a newspaper of general circulation in Puerto Rico. (Docket No. 11). On the same date, and pursuant to Puerto Rico Rule of Civil Procedure 4.6, a copy of the published summons, as well as copies of the Complaint with its Exhibits, Summons, Notice of Issuance of Summons, Informative Motion Submitting Exhibit and the Exhibit of said Motion were sent to Defendants by certified mail, return receipt requested, to their last known addresses. (Id.). On June 10, 2023, the Summons by Publication was also published in The Dallas Morning News, a newspaper of general circulation in Texas. (Docket No. 13). On June 14, 2023, a copy of the summons published in The Dallas Morning News, Dallas Morning News Affidavit of Publication, as well as copies of the Complaint with its Exhibits, Summons, Notice of Issuance of Summons, Informative Motion Submitting Exhibit, and the Exhibit of said Motion were

sent to Defendants by certified mail, return receipt requested, to their last known addresses. (Id.).

On June 29, 2023, the Plaintiffs filed an *Informative Motion and Request for Brief Stay*. They indicated that the Parties had executed a settlement agreement and requested that the Court enter a 30-day stay to allow Defendants to consummate the Agreement through payment of the agreed upon amount. (Docket No. 15).

On August 16, 2023, Plaintiffs filed *Plaintiffs' Informative Motion Re Settlement Agreement*. They reported to the Court that payment from Defendants had not yet been received and that "Foreign counsel for defendants has advised Plaintiffs that if the Settlement Agreement payment has not been received by Plaintiffs by the close of business on Monday, August 21, 2023, Plaintiffs will move this Honorable Court for the entry of default against all defendants for their failure to appear, answer or otherwise plead to the Complaint filed in this case." (Docket No. 21 at 2). On August 21, 2023, Plaintiffs filed their first *Request for Entry of Default*, which the Court granted on September 8, 2023 after Defendants failed to appear and respond to Plaintiffs' Request. (Docket Nos. 22, 27, and 28).

On November 24, 2023, Plaintiffs filed *Plaintiffs' Informative Motion Re Settlement Agreement* informing the Court that the Parties had executed a revised settlement agreement.

(Docket No. 30). On February 6, 2023, Plaintiffs filed their *Plaintiffs' Motion for Entry of Judgment by Default and Request for Ex Parte Trial to Determine Quantum of Damages*, which was their second motion for default against Defendants and they lodged a request for an *ex parte* trial to determine the quantum of damages. (Docket No. 34). Therein, Plaintiffs noted that: (1) as of January 30, 2024, Defendants had paid nothing towards the settlement payment; and (2) Plaintiffs learned that DHC had received $100,000,000.00 from Comerica Bank during the last week of January 2024, which, allegedly, could be used to pay off some portion of the settlement payment. (Id. at ¶¶ 15-16). The Court granted Plaintiffs' motion on February 27, 2024 and entered a default judgment against Defendants. (Docket No. 39).

Also, on February 6, 2023, Plaintiffs filed a *Motion for Prejudgment Attachment without Notice to Defendants*. (Docket No. 35). The Court ordered Plaintiffs to submit evidence to substantiate their allegation that this case presents the requisite extraordinary circumstances that would allow the Court to grant its prejudgment attachment motion. (Docket No. 40). The *Plaintiffs' Motion Submitting "Requisite Evidence to Substantiate Its Allegation of Extraordinary Circumstances"* was filed on March 8, 2024. (Docket No. 41).

## II. FACTUAL BACKGROUND

As stated, on February 27, 2024, the Court entered a second default against Defendants. (Docket Nos. 1 ¶ 47; 39). In doing so, it adopted all well-pled facts in the Complaint. Below, the operative facts of the instant dispute as per Plaintiffs' Complaint at Docket No. 1.

Trust is the sole shareholder of the Puerto Rican Company Cabo Rojo Land Acquisition, LLC ("CRLA"). (Docket No. 1 ¶ 1). Plaintiff GCI is CLRA's operational arm. (Id.). Trust's sole beneficiary is Natalia Cacho-Cambo and its sole trustee and President is Roberto M. Cacho ("Cacho"). (Id.). Cacho oversees both Trust and GCI. (Id.).

DHC is "a Project Funding and Project Management Company" that "works with its own diversified multinational Consortium and funds on EPCF mode on Guarantees; that operates in other foreign jurisdiction. . ." (Id. ¶ 18). Siriwardana is the President/CEO of DHC; the Founder, CEO, and Chairman of Helping Hands; and the Minister of Peace for Helping Hands Inc. Humanitarian All Nations Diplomatic Mission. (Id. ¶ 19). Helping Hands is an international charity. (Id.).

In April of 2020, CRLA was approached by Michael Lynch ("Lynch"), a now deceased financial broker, who represented to Cacho that DHC was working to identify multibillion dollar

engineering, procurement, construction, and funding ("EPCF") projects in which DHC could invest. (Id. at ¶¶ 33, 41-43). On August 3, 2020, CRLA entered into a formal *Memorandum and Agreement* ("MOA") with Siriwardana and DHC, in which DHC committed to provide the EPCF for CRLA's proposed resort hotel and spa project ("Project") to be constructed in Cabo Rojo, Puerto Rico. (Docket Nos. 1 ¶ 2; 1-1 at 2). The Project had an estimated value of $460,000,000.00. (Id.). The MOA provided that the Parties would split an initial $3,500,000.00 administrative fee ("Administrative Fee") to help obtain financing for the Project. (Docket Nos. 1 ¶ 3; 1-1 at 2). CRLA's portion of the fee was valued at $750,000. (Docket Nos. 1 ¶ 3; 1-1 at 2-3). DHC was responsible for paying the remainder of the Fee (*i.e.* $2,750,000.00). (Id.).

On August 9 and 10, 2020, the Parties executed the EPCF Agreement. (Docket Nos. 1 ¶¶ 3, 55; 1-2). The EPCF Agreement and Paragraph 1 of the MOA provide that DHC would pay its portion of the Administrative Fee by accessing the funding sources in DHC's "International Consortium" and would serve as CRLA's consultant to obtain credit facility of $250,000,000.00 towards the Project's cost. (Docket Nos. ¶¶ 3-4; 1-1 at 2-3). In exchange for its investments, DHC would receive 25% of the Project's shares. (Docket Nos. 1 ¶ 4; 1-2 at 51). The ECPF Agreement further stated that "DHC consultancy will cover all aspect of the project from start

to final completion of EPCF Project-Based funding." (Docket No. 1 ¶ 3). The EPCF Agreement provided that CLRA's portion of the Administrative Fee would be fully refundable. (Id. ¶ 5; 41-4 ¶ 9; 41-5 ¶ 9).

Siriwardana, without consent of Plaintiffs or Plaintiffs' representatives, negotiated a $193,000,000 tax credit for the Project with the Executive Director of the Puerto Rico Tourism Company, Mrs. Carla Campos. (Docket No. 1 ¶ 65). Plaintiffs aver that such tax credits can generally be sold on the open market for approximately 90% of their face value and thus, the value of the Tax credits to Plaintiffs was about $173,000,000.00. (Id. ¶¶ 65-68).

CRLA borrowed funds from third parties and GCI to come up with its portion of the Administrative Fee. (Docket No. 1 ¶ 7). It paid DHC $750,000 in December of 2020. (Id. ¶¶ 4, 70). Later, GCI was forced to sell the Trust's ownership interest in CRLA, so that it could repay the money it had borrowed to pay its Administrative Fee portion, plus interest (valued in more than $1,000,000.00). (Id. ¶¶ 7, 72-73). As a result of Plaintiffs' sale of CRLA, Plaintiffs forfeited the right to sell the negotiated tax credits valued to them at about $173,000,000.00. (Id. ¶¶ 68, 74).

In a November 30, 2020 letter to Cacho, Siriwardana and DHC indicated receipt of part of CRLA's portion of the Administrative

Fee and stated that "[u]pon receipt of the entire balance to our account, in 3 banking days, we will immediately send $900,000.00 to you." (Docket Nos. 1 ¶¶ 76, 78; 1-3). In a November 18, 2021 letter to Cacho, Siriwardana and DHC stated:

> [W]e explained that we now have a solid commitment from the Financial Institutes with a fixed contractual date in which we will receive funds so all can be satisfied. It will take 10 international banking days from Monday in which our funds will be wired to our Texas account and immediately we will show proof of wire sent to you. Please also allow the time once it reaches our account to then wire out to you.
>
> Unfortunately, we are under a very strict NDA which prevents me from sending you a copy of our contract at the moment. However, for these extra days we are asking you to kindly wait, we would like to add an additional $50,000 to the $900,000 for the total sum of $950,000.

(Docket No. 1 ¶¶ 80, 82). Plaintiffs alleged in their Complaint that they were never compensated for their portion of the Administrative Fee, nor were they paid any part of the $950,000.00 promised by Defendants. (Id. ¶ 83). Moreover, a former a DHC employee and two DHC "Special Envoys" affirmed that DHC neither paid its portion of the Administrative Fee nor obtained the Credit Facility for the CRLA Project discussed in the MOA and EPCF Agreement. (Docket No. 41-4 ¶ 10; 41-5 ¶ 10).

Plaintiffs allege that they later learned that Defendants' business was a fraudulent scheme and that Defendants had used CRLA's Administrative Fee portion for their own benefit, committing acts of mail fraud, wire fraud, and money laundering by

means of an "enterprise" (*i.e.* Helping Hands). (Docket No. 1 ¶ 8). Plaintiffs further contend that Defendants perpetuated fraud against other Parties, like CRLA, by offering them significant investment and consulting services that Defendants subsequently failed to provide. (Id. ¶ 84). Plaintiffs believe no such "International Consortium" of investors ever existed; that DHC's Administrative Fee Portion was never paid; and Defendants' written and verbal assurances of their experience in carrying out similar transactions were false. (Id. ¶ 9).

### III. LEGAL STANDARD

"Rule 64(a) of the Federal Rules of Civil Procedure permits a court to enter an order seizing property to cover a potential judgment when that remedy is authorized by state law. . ." Sakab Saudi Holding Co. v. Aljabri, 58 F.4th 585, 593 (1st Cir. 2023). Thus, the Puerto Rico Rules of Civil Procedure control prejudgment attachment in this matter and provide that, "[n]o provisional remedy shall be granted, modified, set aside, nor shall any action be taken thereon without notice upon the adverse party and a hearing, except as provided in Rules 56.4 [attachment]. . ." Roca-Buigas v. LM Waste Servs. Corp., No. CV 19-1044 (DRD), 2021 WL 4496467, at *1 (D.P.R. Sept. 30, 2021). P.R. Laws Ann. T. 32 Ap. V, § 56.2; *see also* Rivera Rodriguez & Co. v. Stowell Taylor, 133 D.P.R. 881, --- P.R. Offic. Trans. --- (1993).

Under Rule 56, "[a]n attachment order may not be entered without notice to the adverse party and a pre-attachment hearing, **unless** the claimant demonstrates (1) a previous proprietary interest in the object to be attached, (2) the existence of extraordinary circumstances, or (3) the probability of prevailing on the merits through the use of authentic documentary evidence which shows there is a debt liquid, due, and payable." AGFA Corp. v. Diagnostic Imaging Ctr. PBL, PSC, No. CIVIL 09-1666 (JP), 2009 WL 3429769, at *1 (D.P.R. Oct. 16, 2009) (emphasis added); *see also* P.R. Laws Ann. tit. 32, App. III R. 56.2 (1979); Stowell, 133 D.P.R. at 896; Citibank, N.A. v. Allied Mgmt. Group, Inc., 466 F. Supp. 2d 403, 405-406 (D.P.R. 2006); Molina v. Casa La Roca, LLC, 2021 U.S. Dist. LEXIS 85430, *9-10 (D.P.R. 2021).

The United States Supreme Court has stated that a statute's failure to "provide a preattachment hearing **without at least requiring a showing of some exigent circumstance**, clearly falls short of the demands of due process." Connecticut v. Doehr, 501 U.S. 1, 18 (1991) (emphasis added). Exigent circumstances may exist in cases where the movant makes a supported claim that the non-moving party might transfer, encumber, or take any other action during the pendency of the Court's proceedings that might render the non-movant unable to satisfy judgment. Id. at 16. The Supreme Court went on to state "such a properly supported claim would be

an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected." Id.; *see also* Mitchell v. W.T. Grant Co., 416 U.S. 600, 609 (1974); Fuentes v. Shevin, 407 U.S. 67, 90-92 (1972); Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 339 (1969).

"The Puerto Rico Supreme Court has adopted the definition of extraordinary circumstances given by the United States Supreme Court in Connecticut v. Doehr." Citibank, N.A., 466 F.Supp.2d at 404. Additionally, under Puerto Rico law, mere allegations of extraordinary circumstances are insufficient to overcome the Commonwealth's Constitutional property rights protections. Ramos de Szendrey v. Colon Figueroa, 153 D.P.R. 534, 547, --- P.R. Offic. Trans. --- (2001). Critically, a moving party's allegation of exigent circumstances must be substantiated and reasonable. Id. As such, "[a] party seeking an ex-parte attachment must present prima facie evidence or a sworn statement reasonably sustaining the allegation of extraordinary circumstances." Citibank, N.A., 466 F.Supp.2d at 404 (*citing* Rivera Ortiz v. Rodriguez Pabon, 2002 WL 2029589 at *6 (P.R. Cir. 2002); de Szendrey, 153 D.P.R. at 539).

The Puerto Rico Supreme Court has stated that

> Rule 56 of the Rules of Civil Procedure confers upon the court sufficient flexibility to issue the measures which it deems necessary or convenient, according to the circumstances of the case, to secure the effectiveness of the judgments. Its only limitation is that the measure be reasonable and adequate to the essential purpose of

>the same, which is to guarantee the effectiveness of the judgment which in due time may be rendered.

HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 914 (1st Cir. 1988) (*quoting* F.D. Rich Co. v. Superior Court, 99 P.R.R. 155, 173, 99 D.P.R. 158 (1970)); *see also* Buigas v. LM Waste Servs. Corp., 2023 U.S. Dist. LEXIS 3974, *6 (D.P.R. 2023) (*quoting* Vera-Velez v. Diaz-Sanchez, No. 06-2127 (SEC), 2009 U.S. Dist. LEXIS 81392, 2009 WL 2929337, at *2 (D.P.R. Sept. 8, 2009)) ("Rule 56 affords the Court 'ample discretion in deciding whether to issue an order for provisional remedies.'"); M. Quilichini Sucrs., Inc. v. Villa Inv. Corp., 12 P.R. Offic. Trans. 401, 112 P.R. Dec. 322 (1982) (Under Rule 56.1 "the court may issue a provisional order to secure the effectiveness of the judgments."); Buigas v. LM Waste Servs. Corp., 2021 U.S. Dist. LEXIS 190139, *14-15 (D.P.R. 2021).

## IV.   ANALYSIS

The only matter at issue for the Court is whether extraordinary circumstances exist which justify the issuance of a prejudgment attachment without notice or a pre-attachment hearing. To determine whether such exigent circumstances exist, the Court ordered Plaintiff to provide substantiating evidence to demonstrate that a prejudgment attachment was necessary, just, and reasonable under the United States Constitution and Puerto Rico law.

Plaintiffs state that in January of 2024 Defendants received $100 million dollars in funding that Siriwardana allegedly told Plaintiffs was to go towards paying the settlement price agreed upon in the Revised Settlement Agreement. However, Plaintiffs have received no such payment. Plaintiffs aver that "[t]he Defendants are otherwise undercapitalized entities," and "Defendants' international operations and connections create an impending risk of disposal and/or liquidation or obfuscation of the assets of and by the Defendants." (Docket No. 35 at 11). Plaintiffs further contend that the entrance of pre-judgment attachment would not be without notice given that Plaintiffs sent Defendants emails notifying them of the motion for prejudgment attachment. (Docket Nos. 41-1; 41-3 ¶ 12).

To support their Motion for Prejudgment Attachment, Plaintiffs submitted the testimonies, made under penalty of perjury, of four individuals: Cacho and three associates of DHC. Cacho stated that "neither Defendants DHC, HHI nor Siriwadana has made the Amended Settlement Payment due to Plaintiffs, despite many verbal promises to do so. . .from Defendant Siriwardana in the past few months." (Docket No. 41-3 ¶ 13). Moreover, Cacho averred that "DHC has been approved for hundreds of millions of dollars approximately of new funding from its 'International Consortium'. . .but '[u]pon information and belief, if the New

Funding for DHC is received. . .said funds will be removed as quickly as possible by Defendant Siriwardana to avoid their being reached by Plaintiffs pursuant to any Order or Judgement entered in this Law Suit; that Siriwandara is currently seeking a bank that will not charge DHC to receive the New Funding; and that Defendant Siriwardana does not intend to make the Amended Settlement Payment from DHC's New Funding.'" (Id. ¶¶ 14-15).

DHC affiliates gave similar supporting statements. For instance, Tarinan von Anhalt, former Vice President of DHC, stated that she had been told that "DHC and/or HHI is about to receive many millions of dollars in funding from the 'International consortium' of governments and commercial entities on the continent of Africa and in Europe to fund the projects of HHI. . ." (Docket No. 41-4 ¶ 6). She further averred that "if the New Funding for DHC and/or HHI is received. . .it will be removed by Siriwardana as quickly as possible in order to avoid its being reached by Plaintiffs, and I have also been advised that Siriwardana is seeking a bank that will not charge DHA and/or HHI to receive the New Funding; I have been advised that she wants to "honor" the Settlement Agreement with Plaintiffs, but am not confident that she will." (Id. ¶ 15). Ms. von Anhalt's assertions were reiterated in statements made by both James Thompson and Ron

Miller, designated "Special Envoys" for DHC. (Docket No. 41-5; 41-6).

Considering the evidence before it, the Court concludes that Plaintiffs have adequately demonstrated the existence of exigent circumstances warranting an order for prejudgment attachment without a hearing. Plainly, throughout these proceedings, Defendants have continuously failed to appear, respond, or follow through on their obligations under two different settlement agreements. The Court is not confident that Defendants would attend a scheduled pre-attachment hearing if the Court were to schedule one. Moreover, testimony made under penalty of perjury from individuals associated with Defendants DHC and Siriwardana, suggest that Defendants are actively trying to remove or transfer assets to other unnamed bank accounts. The Court is thus, convinced that Defendants behavior indicates a significant risk that they might act in a manner that undermines the effectiveness of any damages order that this Court may impose following the Court's entry of a default judgment against them at Docket No. 39. In sum, the Court finds that Plaintiffs' allegations of exigent circumstances are both substantiated and reasonable.

## V. CONCLUSION

For the above stated reasons, the Court **GRANTS** Plaintiffs' *Motion for Prejudgment Attachment without Notice to Defendants* and

*Plaintiffs' Motion Submitting "Requisite Evidence to Substantiate Its Allegation of Extraordinary Circumstances."* (Docket Nos. 35 and 41). The Clerk of Court is **ORDERED** to issue a Writ of Attachment on <u>all</u> of Defendants' assets and bank accounts and prevent <u>all</u> assets and bank accounts of the Defendants from being secreted, transferred, pledged, withdrawn, or otherwise dissipated, in order to preserve the *status quo* until such time as this matter can be fully and finally adjudicated.

IT IS SO ORDERED.
San Juan, Puerto Rico, March 14, 2024.

<u>s/ Gina R. Mendez Miro</u>
GINA R. MENDEZ-MIRO
UNITED STATES DISTRICT JUDGE