**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Cacho-Cambo Trust; and Grupo Cacho, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Dawn Holding Company, LLC.; Mrs. Kaushalya Siriwardana; Helping Hands, Inc.; John Doe; ABC, Inc.; and Def, LLC. <br><br> Defendants. | **Civ. No. 23-01118 (GMM)** |

**OPINION AND ORDER**

On February 27, 2024, the Court granted Cacho-Cambo Trust ("Trust") and Grupo Cacho, Inc.'s ("GCI"), (collectively, "Plaintiffs") *Plaintiffs' Motion for Entry of Judgment by Default and Request for Ex Parte Trial to Determine Quantum of Damages*, and entered a default judgment against Helping Hands, Inc. ("Helping Hands"); Dawn Holding Company, LLC ("DHC"); and Kaushaylya Siriwardana ("Siriwardana"), President/CEO of DHC and Helping Hands, (collectively, "Defendants"). (Docket No. 34).

As such, the only outstanding issue is to determine the quantum of damages, if any, to be awarded to Plaintiffs. For the following reasons, the Court **AWARDS** $950,000.00 for repayment of the damages related to the Plaintiffs' paid Administrative Fee and **AWARDS** $57,149.70 in attorneys' fees and costs. The Court **DENIES** Plaintiffs' request for damages arising from the lost tax credits

Civil No. 23-1118(GMM)
Page — 2 —

awarded to a resort and spa to be constructed in Cabo Rojo, Puerto
Rico (the "Project").

## I.   **FACTUAL BACKGROUND**

In entering a judgment of default against Defendants, the
Court adopted all well-pled facts in the Complaint. (Docket Nos.
1; 39). Thus, in making its damages determination, the Court
considers the Complaint's well-pled facts along with the sworn
testimony and exhibits presented at the damages hearing held on
April 5, 2024. (Docket Nos. 1; 61; 62). The Court also accounts
for the supplementary exhibits filed by Plaintiffs at Docket Nos.
58, 64, and 66.

Trust is the only shareholder in the Puerto Rican Company
Cabo Rojo Land Acquisition, LLC ("CRLA"). (Docket No. 1 at ¶ 1).
GCI is CRLA's operational arm. (Id.). Roberto M. Cacho-Pérez
("Cacho") is Trust's sole trustee and President. (Id.). Cacho
controls both Trust and GCI. (Id.). DHC is "a Project Funding and
Project Management Company." (Id. ¶ 18). Helping Hands is an
international charity. (Id. at ¶ 19). Siriwardana is the
President/CEO of DHC; the Founder, CEO, and Chairman of Helping
Hands; and the Minister of Peace for Helping Hands Inc.
Humanitarian All Nations Diplomatic Mission. (Docket No. 1 at ¶
19).

On August 10, 2020, CRLA entered a formal Memorandum and
Agreement ("MOA") with Siriwardana and DHC, in which DHC committed

Civil No. 23-1118(GMM)
Page — 3 —

to provide the Engineering, Procurement, Construction and Funding ("EPCF") for the Project. (Docket Nos. 1 ¶ 2; 58-1).[1] The MOA provides that DHC and CRLA were to jointly raise an initial administrative fee ("AF") of $3,500,000.00 to help acquire financing for the Project, with CRLA contributing $750,000.00 and DHC contributing the remaining $2,750,000.00. (Docket Nos. 1 ¶ 3; 58-1 at 2). The MOA further stated that upon receipt of the full AF, DHC would,

> Facilitate via its International Consortium and as consultant for financial instruments (Project-Based Funding ["PBF"]), provide for Party B [CRLA] to obtain a PBF from a top rated bank in the amount of Two Hundred Fifty Million USD (250,000,000.00 USD) for the sole purpose of EPCF PBF to DHC as beneficiary for project funding.

(Docket Nos. 1 ¶¶ 3-4; 58-1 at 2-3). In exchange for its investments, DHC would receive 25% of the Project's shares. (Docket Nos. 58-1 at 2; 66-2 at 55).

The Puerto Rico Tourism Company ("PRTC") awarded tax credits to CRLA for the construction of the Project. (Docket No. 62 Ex. 10). The Master Concession valued the "the maximum amount of Alternative Tax Credit available for the Exempt Business [CRLA] will be allocated in phases for an Alternate Tax Credit in the sum of $193,885,035.00." (Docket No. 62 Ex. 10 at 4). At the damages

---

[1] The Parties also executed the EPCF Agreement on August 10, 2020. (Docket Nos. 1 ¶¶ 3; 55; 66-2). However, for the purposes of the Court's damages determination, the contents of this secondary agreement are less pertinent than those of the MOA, given that construction of the Project was never initiated.

Civil No. 23-1118(GMM)
Page — 4 —

hearing, Cacho testified that such tax credits, once earned, can be sold, and that the resale value of the credits fluctuated based on various variables such as time of year and other market conditions. According to Cacho and Plaintiffs' Complaint, one estimate of the resale value of the tax credits awarded to CRLA for the Project was approximately $173,000,000.00. (Docket Nos. 1 at ¶ 68).

CRLA borrowed funds from GCI and third-party investors, including José Rodríguez-Benique ("Rodríguez-Benique"), to raise its portion of the AF. (Docket Nos. 1 at ¶ 7; 62 Ex. 8 at 1, Ex. 9). By December 16, 2020, Plaintiffs paid DHC the full $750,000.00. (Docket No. 1 at ¶¶ 4, 70; 66-3). In the following months, Plaintiffs and their investors had multiple e-mail exchanges with Siriwardana in which they requested that she perform under the MOA. She assured them that DHC remained committed to the completion of the Project. (Docket No. 62 Exs. 8, 9, 11). Then, in a September 18, 2021 letter to Cacho, Siriwardana again apologized for the delay in the payment of DHC's portion of the AF and stated that "for these extra days we are asking you to kindly wait, we would like to add an additional $50,000 to the $900,000 for the total sum of $950,000." (Docket No. 62 Ex. 13).

DHC never paid its portion of the AF or the $950,000.00 that it promised to pay Plaintiffs in the September 18, 2021 letter. Moreover, on or around August 9, 2022, Plaintiffs were forced to

Civil No. 23-1118(GMM)
Page — 5 —

sell the Trust's ownership interest in CRLA, including the
Project's tax credits, to PR Investco LLC ("PR Investco") so that
they could pay off their debts to their third-party investors.
(Docket Nos. 1 at ¶¶ 7, 73; 62 Ex. 16).

## II.  <u>PROCEDURAL HISTORY</u>

On March 10, 2023, Plaintiffs filed the instant action against
Defendants and other unnamed defendants. They asserted claims of
fraud, civil conspiracy, *dolo*, conversion, unjust enrichment,
breach of contract, and alleged violations of the Racketeer
Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.
(Docket No. 1). Therein, Plaintiffs sought "judgment, jointly and
severally, against all defendants in the amount of six hundred
million dollars ($600,000,000.00), plus costs of this action,
reasonable attorneys' fees, and such other and further relief as
to the Court seems appropriate under the circumstances." (<u>Id.</u> at
38).

On June 29, 2023, Plaintiffs filed an *Informative Motion and
Request for Brief Stay* indicating that the Parties executed a
settlement agreement for $5,270,000.00 and requested a 30-day stay
to allow Defendants to consummate the Agreement through payment of
the stipulated amount. (Docket No. 15). On August 16, 2023,
Plaintiffs filed an informative motion reporting that Defendants
had not yet paid Plaintiffs in accord with the Settlement Agreement

Civil No. 23-1118(GMM)
Page — 6 —

and indicated their intention to move the court to enter default against defendants if such payment was not received by August 21, 2023. (Docket No. 21).

On August 21, 2023, Plaintiffs filed their first *Request for Entry of Default* ("First Default Request"). (Docket No. 22). On September 8, 2023, the Court granted Plaintiffs' First Default Request after Defendants failed to appear and respond. (Docket Nos. 27; 28). Then, on November 24, 2023, Plaintiffs filed *Plaintiffs' Informative Motion re Settlement Agreement* notifying the Court that the Parties signed a Revised Settlement Agreement for $5,500,000.00. (Docket No. 30).

On February 6, 2023, Plaintiffs filed Plaintiffs' *Motion for Entry of Default Judgment by Default and Request for Ex Parte Trial to Determine Quantum of Damages* ("Second Default Request"), after Defendants had made no contributions towards the settlement payment by January 30, 2024. (Docket No. 34). Therein, Plaintiffs requested that the Court: (1) enter a default judgment against Defendants; and (2) entertain an evidentiary hearing to determine the appropriate quantum of damages to be awarded in this case. (Id.). On February 27, 2024, the Court granted Plaintiffs' Second Default Request at Docket No. 34 and entered a default judgment against Defendants. (Docket No. 39).

On March 15, 2024, Plaintiffs submitted *Plaintiffs' Pre-Hearing Memorandum Addressing "Appropriate Damages to be Awarded*

Civil No. 23-1118(GMM)
Page — 7 —

*in this Case."* (Docket No. 44). Therein, Plaintiffs requested that the Court award them: (1) $950,000.00 plus prejudgment interest for damages proximately caused by Defendants' breach of the MOA and the EPCF Agreement; (2) between $173,880,000.00 and $193,200,000.00 plus prejudgment interest for the loss of tax credits arising from Defendants breach of the MOA and EPCF Agreement; and (3) additional costs and attorneys' fees for Defendants' bad faith and violation of Section 6 of the MOA. (Id. at 6-11). Plaintiffs later supplemented their memorandum with additional exhibits to be presented at the damages hearing. (Docket Nos. 47; 53).

The damages hearing took place on April 5, 2024. (Docket No. 61). Defendants did not appear. Cacho, the trustee of the Trust and the president of GCI, testified.[2] As part of his testimony, fifteen (15) documents were admitted into evidence, namely:

- a May 13, 2020 letter from Siriwardana to Cacho offering to provide project based funding ("PBF") for the Project (Docket No. 62 Ex. 2);
- a July 21, 2020 letter from Cacho on behalf of CRLA to Siriwardana informing her of the receipt of DHC's project funding proposal (Docket No. 62 Ex. 3);
- the EPCF Agreement executed between DHC and CRLA signed on August 10, 2020 (Docket No. 62 Ex. 5);

---

[2] "When the issue of damages is based 'entirely on the credibility of the parties' testimony' a factfinder can choose to either credit or discredit the testimony." Torres-Dillon v. Maldonado, Civil No. 20-01205 (MAJ), 2023 WL 4838155, at *6 (D.P.R. July 28, 2023)(*quoting* Diaz Rivera v. Rivera Rodríguez, 247 F.Supp.2d 106, 107 (D.P.R. 2003)). The Court finds Cacho's testimony regarding the sequence of events that precipitated the April 5, 2024 hearing credible.

Civil No. 23-1118(GMM)
Page — 8 —

- an October 23, 2020 letter from the PRTC to DHC regarding the tax credits proposal submitted for the Project (Docket No. 62 Ex. 6);
- a September 15, 2021 Demand Letter to Siriwardana from Benique's attorney (one of Plaintiffs' investors) attorney demanding that DHC send GCI the owed $900,000.00 (Docket No. 62 Ex. 8. at 1);
- a March 18, 2022 Standard Bank Letter from Belinda W.M. the Chief Risk Officer of Standard Bank Plc London and Emile Cheung the same bank's CFO to the Director of AP Component Trading Company Limited ("AP") indicating that ability to issue an Irrevocable Standby Letter of Credit in favor of AP (Docket No. 62 Ex. 8 at 2);
- an April 16, 2022 TT Direct Cash Transfer Agreement from Balinha Meira Antonio to Helping Hands for $5,000,000,000.00 euros (Docket No. 62 Ex. 8 at 3-12);
- a May 7, 2023 Deutsche Bank Transfer from Deutsche Bank to Helping Hand's account at Ecobank Cameroon (Docket No. 62 Ex. 8 at 13);
- a November 30, 2020 letter from Siriwardana to Cacho promising to send $900,000.00 to CRLA's creditors within 3 banking days upon receipt of the entirety of Plaintiffs' administrative fee in DHC's account (Docket No. 62 Ex. 9);
- the PRTC Master Concession of Tax Exemption and Tax Credits granted to CRLA for the Project on December 12, 2020 (Docket No. 62 Ex. 10);
- a January 26, 2021 letter from Siriwardana to Cacho indicating a continued commitment to funding the Project and apologizing for the delay in payment (Docket No. 62 Ex. 11);
- a September 18, 2021 letter from Siriwardana to Cacho indicating a continued commitment to funding the Project and promising to pay an additional $50,000.00, on top of the $900,000.00, due to the delay in DHC's payment (Docket No. 62 Ex. 13);
- an October 8, 2021 letter from Siriwardana to Cacho reporting on the progress on obtaining foreign funding and indicating that issues shall be resolved by October 18, 2021 (Docket No. 62 Ex. 14);
- a December 20, 2021 letter from Siriwardana to Cacho stating that payment of the CRLA's investors was delayed due to the COVID pandemic and promising to disburse funds between December 27, 2021 and January 5, 2022 (Docket No. 62 Ex. 15);

Civil No. 23-1118(GMM)
Page — 9 —

- an August 16, 2022 letter from the PRTC to a Representative at PR Investco LLC indicating that Plaintiffs were selling CRLA in full, including the Project's awarded tax credits, to PR Investco, LLC (Docket No. 62 Ex. 16);
- a copy of the Revised Settlement Agreement executed on November 22, 2023 between Plaintiffs and Defendants for $5,500,000.00 (Docket No. 62 Ex. 17);
- a March 14, 2024 letter from a Tax Credit and Managing Director at Stonecrest Partners, a tax credit broker, to Cacho providing an estimated valuation of the sold tax credits (Docket No. 62 Ex. 18); and
- a Stonecrest Partners' Presentation describing their expertise and business (Docket No. 62 Ex. 19).

Following the hearing, Plaintiffs submitted documents to substitute several exhibits that had Court identified deficiencies, these were, a signed copy of the MOA executed between DHC and CRLA on August 10, 2020 (Docket No. 58-1); a complete copy of the EPCF Agreement (Docket No. 66-2); GCI's bank transfer records in English (Docket No. 66-3 at 1-4); and a Banco Popular outgoing transfer of funds record (Docket No. 66-3 at 5). Plaintiffs also filed *Plaintiffs' Post-Hearing Memorandum Addressing Damages for Attorneys' Fees and Costs* and exhibits in support thereof ("Post-Hearing Memorandum"). (Docket Nos. 66; 64-1; 64-2). Therein, they requested that the Court award them $57,149.70 in attorneys' fees and expenses plus "an amount equal to Five Percent (5%) of the entire amount awarded. . .to reimburse Plaintiffs for WBMV's [Weinstein-Bacal, Miller & Vega, P.S.C, ("WBMV"), their attorneys] Contingency Fee." (Docket No. 66 at 12).

Civil No. 23-1118(GMM)
Page — 10 —

### III. <u>LEGAL STANDARD</u>

Rule 55 of the Federal Rules of Civil Procedure provides that a Court may enter a default judgment against a party who fails to plead or otherwise defend a claim against it. *See* <u>Avilés-Alicea v. Municipality of San Juan</u>, Civil No. 04-1602 (ADC), 2008 WL 11501535, at *1 (D.P.R. Sept. 16, 2008); <u>Drogueria Betances, LLC v. Young Apparel Empire, Inc.</u>, Civil No. 22-01362 (MAJ), 2023 WL 3408567, at *2 (D.P.R. May 12, 2023), <u>corrected</u>, Civil No. 22-01362 (MAJ), 2024 WL 322336 (D.P.R. Jan. 29, 2024). Under Federal Rule of Civil Procedure Rule 55(b), "[u]nless plaintiff's claim is for a sum certain, the party seeking the default judgment must apply to the Court." <u>United States Dep't of Agric. Farm Serv. Agency v. Carrasquillo Rodriguez</u>, Civil No. 11-1384 (ADC), 2012 WL 12996277, at *1 (D.P.R. Aug. 1, 2012) (*citing* Fed. R. Civ. P. 55(b)(2)).

Specifically, pursuant to Rule 55(b)(2),

If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Fed. R. Civ. P. 55(b)(2); *see also* <u>KPS & Assocs., Inc. v. Designs By FMC, Inc.</u>, 318 F.3d 1, 18 (1st Cir. 2003); <u>Fox v. Se. Transp. Inc.</u>, 25 F.3d 1037 (1st Cir. 1994). Simply put, following an entry

Civil No. 23-1118(GMM)
Page — 11 —

of default by the Court, "[a] hearing may be required. . .to set damages when the amount is in dispute or is not ascertainable from the pleadings." In re The Home Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002); see also Fed. R. Civ. P. 55(b)(2); Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 64 (1st Cir. 2002); HMG Property Investors v. Parque Indus. Rio Canas, 847 F.2d 908, 919 (1st Cir. 1988).

## IV.   APPLICABLE LAW AND ANALYSIS

The Court will now address each of Plaintiffs' damages claims based on the evidence on the record and Cacho's sworn testimony at the April 5, 2024 damages hearing. It will first review Plaintiffs' claim for the $950,000 related to the payment of the AF under the MOA. The Court will then analyze Plaintiffs' request for a damages award related to the lost tax credits. Finally, the Court will address Plaintiffs' request for attorneys' fees and costs pursuant to Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure.

A. Breach of Contract Claims

Plaintiffs' damages requests for (1) $950,000 related to their payment of the AF under the MOA and (2) consequential damages of the lost tax credits, arise from Defendants' breach of the MOA and EPCF Agreement.

In a diversity case, a federal court must apply the choice of law rules of the forum state. See Klaxon Co. v. Stentor Elec. Mfg.

Civil No. 23-1118(GMM)
Page — 12 —

Co., 313 U.S. 487, 496 (1996). "Puerto Rico, the forum territory
in this case, has approved the 'dominant or significant contacts'
test for contract and tort actions. Under that test, the laws of
the jurisdiction with the most significant contacts to the disputed
issues will apply." New Ponce Shopping Ctr. v. Integrand Assur.
Co., 86 F.3d 265, 267 (1st Cir. 1996) (citations omitted). Here,
applying the significant contacts doctrine, and given that there
is no choice of law provision in the relevant contracts, the Court
concludes that the MOA and the EPCF Agreement are governed by
Puerto Rico law.[3] See Allstate Ins. Co. v. Occidental Int'l, Inc.,
140 F.3d 1, 3 (1st Cir. 1998).

In Puerto Rico, "a cause of action for breach of contract
consists of three elements: '(1) a valid contract, (2) a breach by
one of the parties to the contract; and (3)
resulting damages.'" Ocasio v. Perfect Sweet Inc., Civil No. 16-
2012 (BJM), 2018 U.S. Dist. LEXIS 124598, at *7 (D.P.R. July 23,
2018) (quoting Mega Media Holdings, Inc. v. Aerco Broad. Corp.,
852 F.Supp.2d 189, 199 (D.P.R. 2012)). "[W]hen the breach of a
contractual obligation causes harm to any of the contracting
parties, an action for damages for breach of contract lies." Colon

---

[3] Section 6 of the MOA provides that the Agreement is governed by the
International Chamber of Commerce Regulations. (Docket No. 58-1 at 2). However,
the Court does not interpret this as a choice of law provision. Plainly, the
International Chamber of Commerce regulations are procedural rules governing
arbitration proceedings. The Court finds that these regulations do not provide
substantive law applicable to its determination of damages under the MOA.

Civil No. 23-1118(GMM)
Page — 13 —

v. Blades, 717 F.Supp.2d 175, 184 (D.P.R. 2010) (*quoting* Soc. de
Ganciales v. Vélez & Asoc., 145 D.P.R. 508 (1998)). A party who
breaches a contract is "liable to the aggrieved party for damages
which were foreseen or may have been foreseen." Drogueria Betances,
LLC, 2023 WL 3408567, at *3 (*quoting* Oriental Fin. Group, Inc. v.
Fed. Ins. Co., Inc., 483 F.Supp.2d 161, 165 (D.P.R. 2007)); *see
also* P.R. Laws Ann. tit. 31, § 9332.

   1. Damages related to the Administrative Fee

   Section 1 of the MOA provides,

   "PARTY A" [DHC] Facilitate via its International
   Consortium and as consultant for financial instruments
   (Project-Based Funding (PBF)), provide for Party B
   [CRLA] to obtain a PBF from a top rated bank in the
   amount of Two Hundred Fifty Million USD (250,000,000.00
   USD) for the sole purpose of EPCF PBF to DHC as
   beneficiary for project funding. This PBF will be obtain
   25 days after administrative fees of One Point Four
   Percent (1.4%) of Face Value of PBF paid to IC/DHC. PBF
   will be valid for one year and one day. Administrative
   fees (AF) will be of clean, non-criminal origin. DHC
   will accept execution of this agreement as delivery of
   the PBF after 25 business days AF bank confirmation paid.
   Per EPCF agreement (DHCGRC0728020432ME1), DHC will
   invest Two Million Seven Hundred Fifty Thousand USD
   (2,750,000.00 USD) towards a PBF of Two Hundred Fifty
   Million USD (250,000,000.00 USD) for twenty five percent
   shares in Party B's [CRLA's] submitted EPCF project.
   **Party B [CRLA] will pay AF of Seven Hundred Fifty
   Thousand USD (750,000 USD) toward PBF of Two Hundred
   Fifty Million USD (250,000,000.00 USD). Failure to
   obtain a PBF within 25 business days or no later than 30
   business days will cause a full refund of AF to Party B
   [CRLA] within two banking days.**

(Docket No. 58-1 at 2) (emphasis added).

Civil No. 23-1118(GMM)
Page — 14 —

On November 30, 2020, following the execution of the MOA and the EPCF Agreement, Siriwardana emailed Cacho, carbon copying, among others, Rodríguez-Benique, the President of Benique Services, LLC ("Benique Services"), stating:

> we can confirm for your investor forwarding $650,000 to Dawn Holding Company, LLC, that in 3 banking days, DHC will give an additional $200,000.00 for the lender and $50,0000 for José Manuel Rodríguez President of Benique Services, LLC.
>
> However, if they choose to send partial payment today of 50% which is $325,000.00, we will still honor the additional $250,000.00 if they sent the balance within 5 banking days. Upon receipt of the entire balance to our account, in 3 banking days, we will immediately send $900,000 to you.

(Docket No. 62 Ex. 9).

Between November 4, 2020 and December 16, 2020, Plaintiffs transferred to DHC their portion of the AF in the amount of $750,000.00 through multiple wires of their own funds and loans from third-party investors. (Docket No. 66-3). Months later, on September 18, 2021, Siriwardana emailed Cacho again, apologizing for the delay and averring that:

> we now have a solid commitment from the Financial Institutes with a fixed contractual date in which we will receive funds so all can be satisfied. It will take 10 international banking days from Monday in which our funds will be wired to our Texas account and immediately we will show proof of wire sent to you. Please also allow the time once it reaches our account to then wire out to you.
>
> Unfortunately, we are under a very strict NDA which prevents me from sending you a copy of our contract at this moment. However, for these extra days **we are asking**

Civil No. 23-1118(GMM)
Page — 15 —

> **you to kindly wait, we would like to add an additional**
> **$50,000 to the $900,000 for the total sum of $950,000.**

(Docket No. 62 Ex. 13) (emphasis added).

Plaintiffs ask the Court to award them $950,000.00 in damages related to the AF. The $950,000.00 value is derived from the promise made by Siriwardana in the September 18, 2021 letter. The Court thus considers whether that letter created an independent contract under which Plaintiffs can collect damages.

Under Puerto Rico law, a contract must satisfy three elements: consent, a definitive legal object, and consideration. *See* Carrero v. Molina Healthcare of P.R., Inc., Civil No. 21-1605 (RAM), 2023 U.S. Dist. LEXIS 169718, at *3 (D.P.R. Sept. 22, 2023) (*quoting* Soto v. State Indus. Prod., Inc., 642 F.3d 67, 72-73 (1st Cir. 2011)); *see also* Corporación Del Centro Cardiovascular de P.R. v. Medshere Sys. Corp., Civil No. 22-1425 (CVR), 2023 U.S. Dist. LEXIS 87624, at *13 (D.P.R. April 12, 2023) (internal citations omitted); (P.R. Laws Ann. tit. 31, § 3391).[4]

"Consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." Molina Healthcare of P.R., Inc., 2023 U.S. Dist. LEXIS 169718, at *3 (*quoting* P.R. Laws Ann. tit. 31, § 3401).[5] "'[A]ll

---

[4] The equivalent statute under the 2020 Puerto Rico Civil Code is P.R. Laws Ann. tit. 31, § 9771.
[5] The equivalent statute under the 2020 Puerto Rico Civil Code is P.R. Laws Ann. tit. 31, § 9772.

Civil No. 23-1118(GMM)
Page — 16 —

things, even future ones, which are not out of the commerce of
man' and '[a]ll services not contrary to law or to good morals. .
.'" can constitute a contractual object. *See* <u>Benítez-Pons v.</u>
<u>Fideicomiso de Conservación de P.R.</u>, Civil No. 22-1256 (GMM), 2024
U.S. Dist. LEXIS 58488, at *19 (D.P.R. March 26, 2024) (*quoting*
P.R. Laws Ann. tit. 31, § 3421). Finally, valid consideration for
a contract exists when there is "a bargained-for exchange in which
there is a legal detriment of the promise or a corresponding
benefit to the promisor." <u>P.R. Elec. Power Auth. v. Action Refund</u>,
472 F.Supp.2d 133, 137-38 (D.P.R. 2006) (*citing* <u>Neuhoff v. Marvin</u>
<u>Lumber & Cedar Co.</u>, 370 F.3d 197, 201 (1st Cir. 2004)); *see also*
P.R. Laws Ann. tit. 31, § 3401.

Firstly, in the September 18, 2021 letter, Siriwardana offers
to pay Plaintiffs $950,000.00 to wait and allow Defendants
additional time to receive and pay funds in accord with the terms
of the MOA. As demonstrated by Parties' continued communications
regarding performance under the MOA through the end of 2021,
Plaintiffs effectively accepted Defendants' offer. (Docket No. 62
Ex. 15); *see also* <u>P.R. Elec. Power Auth. v. Vitol, Inc.</u>, Civil No.
9-2242 (DRD), 2011 U.S. Dist. LEXIS 170743, at *26 (D.P.R. Sept.
24, 2011) ("[C]onsent may be inferred or tacit by conduct.");
<u>Rivera-Colón v. AT&T Mobility P.R., Inc.</u>, 913 F.3d 200, 209 (1st
Cir. 2019)("implied consent to a contract is enough to meet the
Puerto Rico definition of acceptance.").

Civil No. 23-1118(GMM)
Page — 17 —

Second, this District has stated that one of "the basic tenets of contract law: [is] that the object [of a contract] can be anything, even a future object, and that **the cause does not need to be fully specified as long as it may be possible to determine it without the need for a new agreement** between the contracting parties." APA Int'l Film Distributors, Inc. v. Corporacion de Puerto Rico para la Difusion Publica, 394 F.Supp.2d 443, 450 (D.P.R. 2005) (emphasis added). Here, the Court determines that the contract has a clear object, to wit, money to compensate Plaintiffs for waiting for Defendants' performance under the MOA.

Finally, in consideration of Defendants' offer of $950,000.00, Plaintiffs abstained from exercising their legal right to nullify the MOA and the EPCF agreement for Defendants' failure to perform in accord with the MOA's terms. See De Jesus v. Ruiz, Civil No. 15-2231 (BJM), 2018 WL 3425021, at *6 (D.P.R. July 12, 2018)("a legal detriment was suffered by one party at the request of another in return for the promise of a release from a legal obligation; this exchange of a promise for a performance is valid consideration"); see also Puerto Rico Power Auth. v. Action Refund, 472 F.Supp.2d 133, 138 (D.P.R. 2006). "[A]s a general principle of contract law, courts will not inquire into the adequacy of consideration in an agreed-upon exchange, equity will grant relief where the consideration is so grossly inadequate as to shock the conscience of the court." Kenda Corp. v. Pot O'Gold

Civil No. 23-1118(GMM)
Page — 18 —

Money Leagues, Inc., 329 F.3d 216, 228–29 (1st Cir. 2003) (internal citations omitted). Here, given Defendants' past promises, significant delay in performing under the MOA, and the known standing debts that Plaintiffs owed to their investors, the Court believes that the act of giving Defendants more time to acquire funding and Plaintiffs' continued abstention from canceling the MOA and the EPCF Agreement is sufficient consideration to create a valid contract.

Ultimately, "the Puerto Rico Supreme Court has noted the important social interest in holding parties to their contracts, and therefore the 'validity of [a] contract and of the consent is presumed.'" Citibank Glob. Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir. 2009) (internal citations omitted). As such, the Court concludes that the September 18, 2021 e-mail is an enforceable contract. The record and Cacho's testimony demonstrate that Defendants never paid the promised $950,000.00, thus breaching that contract. The Court accordingly finds that there are adequate grounds to award Plaintiffs their requested $950,000.00 in damages arising from Defendants' breach of their promise to pay Plaintiffs for DHC's delayed payment of its portion of the AF and overdue procurement of the PBF described in section 1 of the MOA.

Civil No. 23-1118(GMM)
Page — 19 —

    2. Lost Tax Credits

    At the damages hearing, Plaintiffs argued that under the MOA
and the EPCF Agreement, they are entitled to damages for the tax
credits they allegedly lost as a result of Defendants' undue delay
and ultimate breach of the MOA and the EPCF Agreement. In
considering whether Plaintiffs are entitled to the value of the
lost tax credits, the Court first looks to the damages terms of
the MOA. Puerto Rico law provides that when "the terms of a
contract are clear and leave no doubt as to the intentions of the
contracting parties, the literal sense of its stipulations shall
be observed." Lind-Hernández v. Hosp. Episcopal San Lucas Guayama,
898 F.3d 99, 104 (1st Cir. 2018) (quoting P.R. Laws Ann. tit. 31,
§ 3471).[6]

    The MOA clearly provides that:

    "Party A's" [DHC] International Consortium (IC) will
    receive AF via MT760/MT542/MT103/MT999 into IC account.
    IC will facilitate issuance of PBF after 25 business
    days. DHC will engage with Party B [CRLA] after 25
    business days with all terms and conditions of EPCF
    contract signed by both Party A [DHC] and Party B [CRLA].

(Docket No. 66-1 at 3). It further states that DHC,

    Warrants that it has the ability and resources to arrange
    through International Consortium (IC), associates,
    contacts and sources, with full corporate
    responsibility, credit funds that are clean, clear and
    readily available to provide a credit facility to "Party
    B" (CRLA) on EPCF Project-Based for available
    sustainable programs.

---

[6] The equivalent statute under the 2020 Puerto Rico Civil Code is P.R. Laws
Ann. tit. 31, § 6342.

Civil No. 23-1118(GMM)
Page — 20 —

(Id.). Thus, the Court finds that the terms of the MOA clearly represent that Defendants can and will raise the requisite PBF for the Project described in the EPCF agreement.

Following the execution of the MOA and EPCF Agreement, the record and Cacho's testimony demonstrate that Defendants sent emails compelling Plaintiffs to rapidly pay their $750,000 portion of the AF, allegedly to enable Defendants to perform their obligations under the MOA. Plaintiffs did so. Defendants then failed to ever perform their reciprocal duties under the MOA, though they continued to make additional representations that they were working to raise the contemplated funding. Ultimately, they never produced their portion of the AF or acquired any project-based funding. Thus, the record plainly establishes that Defendants breached the MOA.

The MOA's provisions also provide for relief available to the contracting Parties in the event of a breach. Section 6 of the MOA regarding equitable relief provides,

> Both Party A [DHC] and Party B [CRLA] agree that **in the event of any breach of this MOA** by any Party, **the circumvented Party shall be entitled to equitable relief including** without limitation: injunction, maximum consideration, **benefits and commission it would realize from said circumvented transaction**, any and all reasonable expenses, including but not limited to all reasonable legal costs and expenses incurred to recover lost revenue; and the violating or circumventing Party shall not oppose the granting of such relief. This agreement is governed by INTERNATIONAL CHAMBER OF COMMERCE (ICC) regulations.

Civil No. 23-1118(GMM)
Page — 21 —

(Docket No. 58-1 at 4) (emphasis added). Section 7 of the MOA describing the Agreement's Non-Circumvention and Non-Disclosure Provisions states in part,

> Each signatory below agrees that he is responsible for assuring that its associates abide by the intent of this MOA and that **violations or circumvention will entitle the violated Party to legal damages equal to the maximum compensation it should have received from such transaction**, plus, reasonable attorney fees and expenses set forth by the court having jurisdiction.

(Id.).

Reading the plain language of the MOA, the Court concludes that Plaintiffs, as the "violated Party," are entitled to the benefits and commission they would have realized from the circumvented transaction and maximum compensation they would have collected had the transaction been performed as described in the Agreement. That is, Plaintiffs are entitled to collect the maximum compensation they would have received had Defendants "facilitated the issuance of the PBF" through their international consortium to fund the construction of the Project, as contemplated under the EPCF Agreement. The MOA does not define consideration, benefits, commission, or compensation; and thus, the Court must next determine whether the lost tax credits qualify as such.

Based on the record before it, and Cacho's own testimony, the Court cannot conclude that the tax credits constitute Plaintiffs' lost consideration, benefits, commission, or compensation arising from Defendants' breach. Firstly, the tax credits described in the

Civil No. 23-1118(GMM)
Page — 22 —

Master Concession were conditional and would only be earned after
various stages of the Project's construction were completed.
Moreover, the value of the tax credits earned was directly
proportional to the amount expended on the Project's development.
*See e.g.* (Docket Nos. 47-1 at 2; 62 Ex. 10 at 2 ("the Director
grants to Applicant (CRLA): (i) Alternative Tax Credits. . .and
(ii) tax exemptions. . .in connection with the **development**,
**ownership and operation** of the Tourism Activity; PROVIDED, that
the operations of the Tourism activity shall be carried out
substantially as described in the Application and in accordance
with the terms and conditions of the Act." (emphasis in original));
(Docket Nos. 47-1 at 4; 62 Ex. 10 at 4 (stating that the maximum
amount of Alternative Tax Credit available was thirty percent (30%)
of the eligible investment spent on the tourism activity by the
end date of each development phase)). Additionally, at the damages
hearing, Cacho reiterated that the manifestation of the tax credits
was dependent on the awardee's investment in, and construction of,
the Project.

Cacho further explained that the tax credits, once earned,
could only be monetized by either: (1) reducing the tax liability
that an awardee owes to the Puerto Rican government; or (2) being
sold at a reduced rate on the market to a third party. As such,
even *arguendo* that Cacho would have earned the maximum value of
the tax credits but for Defendants' breach, the Court cannot

Civil No. 23-1118(GMM)
Page — 23 —

characterize reduced tax liability or a speculative secondary sale value[7] as qualifying as Plaintiffs' lost consideration, benefits, commission, or compensation clearly resulting from Defendants' breach of the MOA. In sum, the damages provisions of the contracts do not provide grounds under which the Court can grant Plaintiffs damages for the lost tax credits. Thus, the Court looks to Puerto Rico contract law to determine if damages for the tax credits might otherwise be available to Plaintiffs as the non-breaching party.

Under the 2020 Puerto Rico Civil Code, "[t]he indemnification of damages for the breach of the obligation, or for its partial, late or defective fulfillment includes consequential damages." Drogueria Betances, LLC, 2023 WL 3408567, at *4 (quoting P.R. Laws Ann. tit. 31, § 9331). Puerto Rico contract law provides that "a party acting in good faith is only liable for foreseeable consequential damages; a party acting in bad faith is liable for all consequential damages." Banco Popular de Puerto Rico v. 422 Corp., Civil No. 07-1859 (JAF), 2008 WL 11504098, at *6 (D.P.R. May 30, 2008) (citing P.R. Laws Ann. tit. 31, § 3024 (1991)) (emphasis added). Here, the record and Cacho's testimony support that Plaintiffs and Defendants were both privy to, if not directly involved in, discussions with the PRTC that occurred prior to the execution of the MOA and EPCF Agreement regarding the tax credits.

---

[7] The Court notes that there is a possibility that the tax credits, if earned, might not have sold at all on the secondary market.

Civil No. 23-1118(GMM)
Page — 24 —

*See e.g.* (Docket Nos. 47-1 at 4; 62 Ex. 6). Accordingly, at the time the MOA and the EPCF Agreement were signed, Parties were aware that the manifestation of the tax credits was dependent on performance of the MOA and the EPCF Agreement. As such, the Court finds that the <u>loss of the opportunity</u> to earn the tax credits was a foreseeable consequential damage of Defendants' breach and thus, the Court need not perform a *dolo* analysis.

Following the entry of a default judgement, "a plaintiff still bears the burden of proving damages with reasonable certainty." <u>N. Costa, LLC v. 115 Mgmt., Inc.</u>, Civil No. 20-1468 (BJM), 2022 WL 4115634, at *8 (D.P.R. Sept. 9, 2022). Moreover, it is well settled that any damages award must not only be established with reasonable certainty, but also a plaintiff "cannot rely upon speculation" to prove his or her damages. *See* <u>Sostre v. Turabo Testing</u>, 364 F.Supp.2d 144, 148 (D.P.R. 2005) (*citing* <u>National Chain Co. v. Campbell</u>, 487 A.2d 132, 134-35 (R.I. 1985)); *see also* <u>Lincoln Rd. Prods., Inc. v. Reign Ent. Grp.</u>, Civil No. 12-1895 JAG, 2014 WL 6893663, at *8 (D.P.R. Dec. 5, 2014); <u>Allens Mfg. Co., Inc. v. Napco, Inc.</u>, 3 F.3d 502 (1st Cir. 1993); <u>Restatement (Second) of Contracts</u>, § 352 (1981) ("Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty.").

In this case, the Court finds that the value of the lost opportunity to earn the tax credits awarded to the Project cannot

Civil No. 23-1118(GMM)
Page — 25 —

be reasonably ascertained. As previously explained by Cacho, the tax credits would be earned through the construction of the Project and then could subsequently be monetized through either a reduction in tax liability related to the Project or through sale to a third party. Plainly, Plaintiffs never had the opportunity to build the Project and thus accrued no tax liability that could benefit from being reduced by any earned tax credits. Secondly, even *arguendo* that: (1) no breach occurred; (2) the Project was built in accordance with the terms of the MOA, the EPCF Agreement, and the Master Concession; and (3) the Project earned maximum tax credits as described in the Master Concession, the resale value of those tax credits is still undeterminable with reasonable certainty. This, mostly because the record is void of any evidence that can sustain an award of those damages for lost opportunity.[8] At the damages hearing, Cacho stated that the resale value of tax credits varies throughout the year depending on a range of variables such as the existence of interested buyers and the proximity to tax payment deadlines.[9] Based on the record before it, the Court cannot

---

[8] To this point, Plaintiffs did not present any evidence to quantify monetary damages regarding the loss of business opportunity, damage to reputation or any other possibly valid claim in connection with the loss opportunity as to the tax credits.

[9] The Court acknowledges that Plaintiffs presented a resale valuation estimate of the tax credits by Stonecrest at Docket No. 62 Ex. 18. However, at the damages hearing the Court stated that the exhibit's contents, including the valuation estimate, were hearsay. The Court only admitted the valuation as an exhibit to demonstrate that such credits could be sold on the market. Thus, the Court will not consider this valuation in making its damages determination.

Civil No. 23-1118(GMM)
Page — 26 —

grant damages for the lost opportunity to benefit from the Project's tax credits without engaging in significant speculation given the range of factors that would impact the earning and monetization of the unconstructed Project's yet unearned tax credits and that lack of evidence to support the claimed award. Thus, the Court denies Plaintiffs' requested award for the lost tax credits.

B. Attorneys' Fees

"It is beyond serious dispute that a federal court possesses inherent power to shift attorney's fees when parties conduct litigation in bad faith." Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993); *see also* Roadway Exp., Inc. v. Piper, 447 U.S. 752, 766 (1980) (finding that once a Court makes a finding of bad faith it may exercise its discretion and shift fees); Chambers v. NASCO, Inc., 501 U.S. 32 (1991); Rivera v. LifeLink Found., Inc., 255 F.Supp.3d 327, 330 (D.P.R. 2017).

In a diversity case, state rather than federal law controls the question of attorney's fees. *See* Peckham v. Continental Casualty Ins. Co., 895 F.2d 830, 832 (1st Cir. 1990). Under Puerto Rico Law, a prevailing party, in the absence of a statutory or contractual provision "may be entitled to attorneys' fees. . .when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Bermudez v. Berrios, Civil No. 15-1034 (CVR), 2020 U.S. Dist. LEXIS 61160, at *3 (D.P.R. April 6,

Civil No. 23-1118(GMM)
Page — 27 —

2020) (*quoting* <u>Peckham</u>, 895 F.2d at 841; <u>Rodríguez-Torres v.</u>
<u>Government Development Bank of Puerto Rico</u>, 708 F.Supp.2d 195, 198
(D.P.R. 2010)).

The attorneys' fee award in the present case is controlled by
Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure which
permits fees only where a "party or its lawyer has acted
obstinately or frivolously." P.R. Laws Ann. tit. 32, App. III,
Rule 44.1(d). In making a damages determination under Rule 44.1(d),
the Court must first make a threshold finding of obstinacy. *See*
<u>Dopp v. Pritzker</u>, 38 F.3d 1239, 1252 (1st Cir. 1994). "A party has
been obstinate when it engages in actions that make avoidable
litigation necessary, unnecessarily prolongs litigation, or
requires the other party to incur expenses in the pursuit of
avoidable tasks." <u>LifeLink Found., Inc.</u>, 255 F.Supp.3d at 331; *see*
*also* <u>Surface Am., Inc. v. United Sur. & Indem. Co.</u>, 867 F.Supp.2d
282, 289 (D.P.R. 2012). In determining whether a litigant has acted
in an obstinate manner, courts consider if a party has been
"unreasonably adamant or stubbornly litigious, beyond the
acceptable demands of the litigation, thereby wasting time and
causing the court and the other litigants unnecessary expense and
delay." <u>De Leon Lopez v. Corporacion Insular de Seguros</u>, 931 F.2d
116, 126 (1st Cir. 1991).

The Court finds that it is unquestionable that Defendants in
the present matter have demonstrated the requisite obstinacy to

Civil No. 23-1118(GMM)
Page — 28 —

justify this Court's award of attorneys' fees under Rule 44.1(d).

For instance, at the damages hearing, Plaintiffs reported that:

> defendant Siriwardana knowingly declined to appear in this
> case — either personally of for her corporations, defendants
> DHC and HHI. . .because she believed that any judgement
> entered by this Honorable Court would not be valid in the
> Defendants' home state of Texas. . .Defendants' refusal to
> appear in this litigation was and remains an affront not only
> to the Plaintiffs, but to this Honorable Court and the
> American system of justice.

(Docket No. 66 at 6). Plaintiffs also highlight that Defendants
executed and subsequently reneged on two separate settlement
agreements. (Id. at 8). Defendants' failure to appear in these
proceedings, continued engagement in dilatory *ex parte*
negotiations with Plaintiffs, and repeated repudiation of any
promises made in settlement discussions, placed an unnecessary
burden on the time and efforts of both Plaintiffs and the Court.
(Id.). Defendants' actions in this case are a textbook example of
the obstinate behavior contemplated under Rule 44.1(d), and thus
the Court need only determine the appropriate value of attorneys'
fees to be awarded to Plaintiffs for Defendants' delinquency.

"Once the court makes the threshold determination of
obstinacy or frivolousness, the imposition of attorneys' fees is
mandatory." MB Auto Care Mgmt., Inc. v. Plaza Carolina Mall, L.P.,
755 F.Supp.2d 382, 385 (D.P.R. 2010) *(citing* Correa v. Cruisers,
a Div. of KCS Int'l, Inc.*,* 298 F.3d 13, 30 (1st Cir. 2002)); *see
also* Drogueria Betances, LLC, 2023 WL 6210902, at *3. In Puerto

Civil No. 23-1118(GMM)
Page — 29 —

Rico, "attorneys' fees are not meant to compensate a litigant for the total costs incurred in the lawsuit." IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 451-52 (1st Cir. 2010) (*citing* Corpak, Inc. v. Ramallo Bros. Printing, Inc., 125 D.P.R. 724, 1990 PR Sup. LEXIS 141, 162). Instead, "fee awards 'must be commensurate to that amount which, in the opinion of the court, reasonably represents the value of th[e] [legal] services, considering the degree of obstinacy [or frivolousness] and other circumstances of the case.'" Id. (*citing* Asociación de Condóminos v. Trelles Reyes, 120 D.P.R. 574 (1988)).

In making an attorney's fees determination, "[c]ourts may [also] consider several factors, such as whether a litigant's conduct needlessly prolonged the litigation, wasted the other party's and the court's time, acted in bad faith and if the other party and the court incurred in needless procedures, unreasonable efforts and expenses." Renaissance Marketing, Inc. v. Monitronics Intern., Inc., 673 F.Supp.2d 79, 84 (D.P.R. 2009). Additionally, courts can account for "the nature of the action, the questions of law involved, the amount at issue, the time spent, the efforts and professional activity needed for the case, and the skills and reputation of the lawyers involved." Fajardo Shopping Ctr., S.E. v. Sun All. Ins. Co. of Puerto Rico, 81 F.Supp.2d 331, 334 (D.P.R. 2000) (*quoting* Corpak*, 125 D.P.R. at 738 (Slip P.R. Offic. Trans. at 11-12)). But ultimately, "the amount of the fees awarded is

Civil No. 23-1118(GMM)
Page — 30 —

left to the discretion of the court." <u>MB Auto Care Mgmt., Inc.</u>, 755 F.Supp.2d at 385 (*citing* <u>Correa</u>, 298 F.3d at 30); *see also* <u>Dopp</u>, 38 F.3d at 1252 ("Rule 44.1(d) vests the court with considerable discretion in determining the amount of attorneys' fees to be bestowed.").

In the present case, Plaintiffs retained the legal services of WBMV on February 9, 2023. (Docket No. 64-1). Over the subsequent 15 months, four attorneys and two law clerks at WBMV spent approximately 143.7 hours working on this case. (<u>Id.</u> at 12). During this time, Defendants never appeared in Court. Plaintiffs' attorneys expended significant time negotiating and executing two separate settlement agreements, upon which Defendants never performed. In response to these settlement agreements, Plaintiffs' Attorneys filed multiple motions to keep the Court abreast of extra judicial settlement efforts between the Parties. In response to these motions, the Court delayed proceedings multiple times to allow Parties to perform the executed settlement agreements, upon which Defendants ultimately reneged.

Moreover, Cacho testified that Defendants have been fully aware of these proceedings and have continuously engaged in frequent *ex parte* conversations with himself and Plaintiffs' counsel, whilst simultaneously failing to cooperate in good faith in the resolution of this dispute. The record also contains testimonies from Cacho and DHC affiliates stating that, even if

Civil No. 23-1118(GMM)
Page — 31 —

Defendants received funds from which they could pay Plaintiffs pursuant to the Amended Settlement Agreement, Siriwardana would transfer those funds to an unreachable bank account as quickly as possible to avoid the funds being reached by Plaintiffs. *See e.g.* (Docket Nos. 41-3; 41-4; 41-5; 41-6). Such testimonies further underscore Defendants' disregard for their contractual legal obligations.

Plaintiffs request an award of $57,149.70 in attorneys' fees and costs, which represent the entirety of legal costs accrued in these proceedings. (Docket No. 66 at 11). Plaintiffs further ask this Court to award it "five Percent (5%) of any amount recovered by Plaintiffs from the Defendants (the "Contingency Fee")." (Docket Nos. 66 at 11; 64-1). Considering the evidence before it, the Court finds that the record demonstrates that Defendants repeatedly and flagrantly disregarded their legal obligations, as well as demonstrated a significant disregard for the time and resources of both this Court and Plaintiffs. The Court thus concludes that Plaintiffs' request for $57,149.70 in attorneys' fees and costs is appropriate. The Court, however, declines to award Plaintiffs' their requested contingency fee.

## V. CONCLUSION

For the aforementioned reasons, the Court **AWARDS** $950,000.00 for repayment of the damages related to the Plaintiffs' paid

Civil No. 23-1118(GMM)
Page — 32 —

Administrative Fee and **AWARDS** $57,149.70 in attorneys' fees and costs. The Court **DENIES** Plaintiffs' request for damages arising from the lost tax credits awarded to the Project. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, May 22, 2024.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE